OPINION OF THE COURT
Theodore S. Kasler, J.
Defendant applies to this court for an order sealing a search warrant application in support of three search warrants issued by this court and executed April 22,1981. The search warrants were returned to this court on April 24, 1981 and the written inventory filed. The application was delivered to this court on May 11, 1981. In addition, defendant seeks a complete prohibition of the disclosure of information contained in the application. It is alleged that the application’s content contains prejudicial information, the dissemination of which would prevent a fair trial from being accorded the defendant. The District Attorney, much to the disappointment of this court, takes no position. Local newspapers and television stations intervened opposing any restriction on the public, press and media’s access to newsworthy information, namely, the search warrant application. There is little doubt that this case and the *768 defendant, known as the “.22-caliber killer,” have received massive publicity from the press and media. The court is aware of the competing parties’ positions as well as the effects of any . further infusion of information that might potentially prevent the defendant from receiving a fair trial.
Upon request of this court, the press and media delivered newspaper stories and transcripts of broadcasts, the subject matter of which concerned this case and spanned in time either a day or two before the search warrants were executed to the argument of this motion, May 8, 1981. Upon comparison with the application, very little of what is contained therein is known by the public and prevents this motion from being moot.
The court will first address the issue of whether the search warrant application is an official court record. It has been generally held that such records are in the public domain and open to public inspection with an equal right accorded to the press and media. Sanctions may not be imposed on the publication of truthful information contained therein (see Cox Broadcasting Corp. v Cohn, 420 US 469). The rationale underlying such position is that the State “[b]y placing the information in the public domain on official court records *** must be presumed to have concluded that the public interest was thereby being served” (Cox Broadcasting Corp. v Cohn, supra, p 495) and that the media’s access “guarantee [s] the fairness of trials and * * * bring[s] to bear the beneficial effects of public scrutiny upon the administration of justice” (Cox Broadcasting Corp. v Cohn, supra, p 492). Sanctions are forbidden because “‘[t]hose who see and hear what transpired can report it with impunity(Cox Broadcasting Corp. v Cohn, supra, p 492, quoting Craig v Harney, 331 US 367, 374).
In this State there appears to be an unqualified right to inspect court records of the clerk of the court (Judiciary Law, § 255), subject only to the inherent power the court possesses with respect to its own records to seal them as the interests of. justice may dictate (see Matter of Hynes v Karassik, 47 NY2d 659). Prerequisite to becoming a court record is the requirement that the papers must be filed *769 with the clerk of the court (see Matter of Werfel v Fitzgerald, 23 AD2d 306). The procedure involved in making a paper a court record was explained in Matter of Gubelman (10 F2d 926, 929, mod 275 US 254), and is worth repeating here: “The word ‘filed’ has not been defined by Congress. It has, however, a well-defined meaning. It signifies the delivery into the actual custody of the proper officer, designated by the statute, and whose duty it is to keep the records of the court. It carries with it the idea of permanent preservation of the thing as a public record. A paper is not filed by presenting it to the judge. He has no office in which papers are filed and permanently preserved. A paper in a case is not filed until it is deposited with the clerk of the court, for the purpose of making it a part of the records of the case”.
Close scrutiny of CPL article 690 reveals no instruction that the search warrant application be filed with the court. In fact, only the written inventory of the property seized pursuant to a search warrant must be filed when the executed warrant and seized property are returned to the court (CPL 690.50, subd 5). Similarly, the statutes pertaining to eavesdropping warrants (CPL art 700) do not require the filing of applications in support of such warrants. Rather, the original application of the issued warrant must be retained by the justice (emphasis added) issuing it, while a copy of such papers must be retained by him when the application is denied (CPL 700.55, subd 1). Obviously, a fair reading of the statutes in either case reveals that filing of a warrant application is neither mandated nor contemplated.
In contrast is subdivision (g) of rule 41 of the Federal Rules of Criminal Procedure (US Code, tit 18, Appendix) that provides the Federal Magistrate to whom the warrant is returned shall attach to the warrant a copy of the return and all other papers in connection therewith and file them with the Clerk of the District Court. Clearly, the application would be filed (see Gregory v United States, 597 F2d 1087; United States v Ball, 316 F Supp 685, cert dsmd 400 US 801) and subject to public inspection as a court record (Matter of Search Warrant For Second Floor Bedroom, 489 F Supp 207). Sealing the application by a Federal court is *770 permitted as deriving from its “inherent power, as an incident of their constitutional function, to control papers filed with the courts within certain constitutional and other limitations” (Matter of Sealed Affidavit[s] To Search Warrants, 600 F2d 1256, 1257). No such comparable law directing the filing of warrant application is found in New York. Federal court decisions on the sealing of search warrant applications are of little aid here since those applications are official court records open to public inspection (cf. Matter of Search Warrant, 108 Misc 2d 440).
Though filing of the application is not mandated, it cannot be said that the Justice issuing the warrant surrenders control over it to the applicant to do with it as he may please. There is little doubt that the application is a vital component of the court’s record basis of the order (see People v McCall, 17 NY2d 152) and as such should remain under the court’s supervision subject to inspection only by the parties involved (see People v Darden, 34 NY2d 177, 182; People v McCall, supra, p 159).
Inasmuch as the search warrant application is not a public court record and therefore not accessible to inspection by the public at large, the press and media have no right to inspect it either. Their right of access is no greater than that of the public (Nixon v Warner Communications, 435 US 589). Therefore, this case is neither one where restrictions are being placed upon press access to, or publication of, any information in the public domain (see Nebraska Press Assn. v Stuart, 427 US 539) nor one seeking to exclude the public from a pretrial proceeding (see Matter of Gannett Co. v De Pasquale, 43 NY2d 370, affd 443 US 368; Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430).
The same conclusion of nonaccessibility must be reached regarding papers, including this application, and information that are not public. The media does not possess an inherent right of access to government information or sources of information within the government’s control under the First and Fourteenth Amendments (see Houchins v KQED, Inc., 438 US 1). It is well settled that although there is an undoubted right to gather news from any source *771 by means within the law (Branzburg v Hayes, 408 US 665), the Constitution neither compels the government to provide the media with information, or access on demand, nor guarantees anyone access to government information beyond that open to the public generally (see Houchins v KQED, Inc., supra, citing Grosjean v American Press Co., 297 US 233; Mills v Alabama, 384 US 214). More succinctly stated, “[t]he right to speak and publish does not carry with it the unrestrained right to gather information” (Zemel v Rusk, 381 US 1,17; see, also, Branzburg v Hayes, supra).
In declaring that the Constitution is not a freedom of information act, the Supreme Court in Houchins (438 US 1, supra) suggests that properly drawn legislation may provide for media access to overcome such constitutional shortcomings. Our legislative branch has enacted just such disclosure laws (Public Officers Law, §§84-90) but has clearly exempted the courts (Public Officers Law, §86, subd 3; see Babigian v Evans, 104 Misc 2d 140). Since no constitutional attack upon this exception has been sustained, this court must respect the legislative determination that privacy, security, or confidential considerations regarding the judiciary outweigh those for access, though it is constricted somewhat by section 4 of the Judiciary Law and the recent Supreme Court ruling that the traditional right of access to attend criminal trials is implicit in the guarantees of the First Amendment (Richmond Newspapers v Virginia, 448 US 555). Accordingly, the media has no right to access to this search warrant application.
The advocates of unlimited media access advance in support of their position the need to review the procedures employed by law enforcement officers in this case to ensure that the defendant is the most probable suspect and was apprehended through the fullest employment of all investigative procedures in order that neither the defendant nor the community is shortchanged with a false impression of investigative completion or success. Though these interests may be well founded, the information that is contained in the search warrants may be gathered in other ways though not as conveniently assembled as it is in the application. That the media is not prohibited from interviewing *772 those involved in the present investigation, is just one example (see Houchins v KQED, Inc., supra, p 15). Mistakenly assumed also is the misplaced emphasis that the warrant application’s reception into the flow of public information would somehow “guard against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism” (Sheppard v Maxwell, 384 US 333, 350). Alternatives do indeed exist that prevent such problems (cf. Houchins v KQED, Inc., supra). When the Grand Jury hands up an indictment, as it has done here, it performs the historic function of being a bulwark against unwarranted prosecution (see People v Cohen, 52 NY2d 584 [Gabrielli, J., concurring]). The presumed openness of all court proceedings (see Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, supra; Matter of Oneonta Star Div. of Ottaway Newspapers v Mogavero, 77 AD2d 376) as well as the available phalanx of appellate review are other safeguards.
The unique character and use of the search warrant application demonstrates that it is not a paper unequivocally open to public inspection. The identity of the anonymous source of information sometimes contained in them has caused the courts to balance access to such information by the defendant, against the privacy that furthers and protects the public interest in effective law enforcement (People v Darden, 34 NY2d 177, supra). Should privacy considerations prevail, total preclusion from public knowledge may be had (Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 381, n 3, supra). An unlimited right to access by the public to search warrant applications is not condoned.
Since the search warrant application is not an official court record, neither the public nor the press and media have any right of access to it. And, in order to guarantee that the application is not inadvertently or intentionally introduced into the public domain, the court seals the search warrant application in its possession and in so doing exercises the inherent power it possesses while keeping within constitutional limitations. It is further ordered that all copies held by the court, counsel and police agencies *773 likewise be sealed. Verbal disclosure is also prohibited as to anyone having knowledge of the contents thereof.
The court is required to take this measure so that the defendant will be ensured that his guilt or innocence will be adjudicated in the courtroom only and that the verdict will be based on evidence received in open court rather than from outside sources (see Sheppard v Maxwell, 384 US 333, 350-351, supra). Though unable to recite the contents of the application, the court believes it to be highly prejudicial and likely to jeopardize defendant’s right to an impartial jury were it made known.
Wherefore, the court grants defendant’s application to seal the search warrant application and all reproductions, and proscribes counsel, police officers, and anyone else knowledgeable of the contents thereof from making extrajudicial statements disclosing the application’s contents.