OPINION OF THE COURT
Lawrence E. Kahn, J.
This CPLR article 78 proceeding seeks a declaration that *495 the failure to afford Capital Newspapers the opportunity to be heard through counsel prior to closure of the Wyley Gates preliminary hearing, held on January 6, 1987, in the Canaan Town Justice Court, was arbitrary and capricious and resulted in a denial of due process.
Neither the defendant nor the Columbia County District Attorney have been made respondents to this proceeding. However, in the context of petitioner’s request for relief, they are not necessary parties. Petitioner does not seek to compel release of a copy of the transcript of the preliminary hearing or disclosure of any information which would impact upon the pending trial. The only issue is whether respondent’s failure to afford petitioner the opportunity to be heard through counsel violated the procedural preconditions to closure.
The facts giving rise to the present proceeding are not disputed. On January 6, 1987, a preliminary hearing in the case of People v Wyley Gates was convened in the Canaan Town Court, Columbia County, respondent Town Justice presiding. Present were the Columbia County District Attorney, the defendant, represented by counsel, members of the public and the news media. The defendant, a high school student, is charged with the shooting deaths of four individuals, three of whom were his family members.
At the commencement of the proceeding, a motion was made by counsel for the defendant to close the hearing to the public and the press. He premised his motion upon the rural nature of the county and the relatively small size of any potential jury pool, together with the fact that he expected the hearing to adduce only a synopsis of the facts surrounding the case and that this unspecified "scintilla of evidence” would somehow irrevocably impinge upon the impaneling of an impartial jury. After the District Attorney had consented to closure without comment, respondent inquired whether anyone else present would like the opportunity to speak in opposition. In response thereto, various members of the media identified themselves for the record and requested a short adjournment for the purpose of having an attorney present to argue the motion. All such requests were denied. One individual addressed the merits of the motion. He asserted that defense counsel’s arguments were contradictory and legally insufficient in that the unspecified minimal amount of evidence could not form the basis for any constitutional impingement upon defendant’s right to a fair trial.
*496 After a brief recess, the Judge stated that there is a "general benefit for legal proceedings to be held in public whenever possible.” However, citing CPL 180.60, he closed the preliminary hearing, finding "a strong likelihood of public disclosure of prejudicial information which could possibly damage the defendant’s right to a fair trial.” While further recognizing "that great public curiosity exists with regard to the case,” he held that nothing had been presented to "counterbalance the immediate threat of prejudice to the defendant.” A member of the media then stated that an attorney had been contacted who "should be on his way shortly from Albany” (a trip which normally takes approximately one hour). However, respondent indicated that the motion had already been decided and directed the public to leave the courtroom.
Respondent asserts that a highly charged, emotional atmosphere surrounded the proceeding in question. The preliminary hearing was conducted in a single room in the town highway garage, which room was populated by various members of the defendant’s family, as well as acquaintances of the alleged murder victims. Respondent was aware that the defendant had been the subject of anonymous death threats. All courtroom windows having exterior views were covered with paper. The defendant was transported to the site in an unmarked car and provided with bullet-proof protective clothing. Respondent indicates that he considered it imprudent to delay the hearing for any undetermined period of time while counsel was sought to argue against closure.
As recently as 1979, the Court of Appeals reaffirmed its historical position that "the public and press [have] no constitutional right of access to court proceedings under either the First Amendment or the similar provision in the State Constitution (art I, § 8).” (Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 443.) However, this decade has seen continual expansion of the right of public access to our courtrooms. On June 4, 1987, in its opinion entitled Matter of Associated Press v Bell (70 NY2d 32, 37), the Court of Appeals acknowledged the existence of a "First Amendment right of access”. It held that the public’s constitutionally protected right to open criminal proceedings is presumptive, and may only be diminished when "the right of the accused to a fair trial might be inhibited or undermined by unrestricted publicity” (supra, at 38). In such an instance, "the trial court must determine whether the situation is such that the rights of the *497 accused override the qualified First Amendment right of access” (Press-Enterprise Co. v Superior Ct., 478 US —, —, 106 S Ct 2735, 2741).
The procedure prior to closure requires a motion in open court, demonstration by defendant of a strong likelihood of prejudice, an opportunity for the public to be heard and an explanation for closure in open court (Matter of Johnson Newspaper Corp. v Parker, 101 AD2d 708). The key to closure is a "specific finding of a substantial probability that the defendant’s right to a fair trial would be prejudiced by publicity that closure would prevent, and no finding that reasonable alternatives to closure could not adequately protect defendant’s fair trial rights.” (Matter of Associated Press v Bell, supra, at 39.) The mere possibility of prejudice is insufficient. Such a possibility may be present in every extensively publicized trial. This constitutional guarantee may not be eroded by speculation. To permit otherwise would allow a trial court, at its own whim, to arbitrarily close a criminal proceeding by simply noting that the case may be highly publicized.
Significantly, there is no duty on the public or media to articulate a basis for denying a closure motion. They have no affirmative burden. The highest court of this land has established that they derive the right directly from the First Amendment. It is the defendant who has the burden to demonstrate the "substantial probability” that his constitutional guarantees to a fair and impartial jury will be thwarted, absent closure or some lesser alternative.
In ordering closure of the Wyley Gates preliminary hearing, respondent indicated that he recognized a "general benefit for legal proceedings to be held in public”. What he failed to recognize was the constitutional guarantee of openness, a standard which is light years beyond a mere "general benefit”.
In this proceeding, Capital Newspapers has restricted its request for relief to a declaration that the closure of the Wyley Gates preliminary hearing was arbitrary, capricious and that due process mandated an opportunity to be heard through counsel prior to being excluded from the courtroom. The case of Matter of Johnson Newspaper Corp. (supra) involved an article 78 proceeding similar to the one at bar, wherein the press and public were excluded from a criminal preliminary hearing. It also involved the alleged murder of a family member. Therein, the court determined that the Justice’s refusal to "either hear the argument of petitioner’s *498 attorney on the telephone or grant a short adjournment to permit him to attend” (supra, at 709) was arbitrary and capricious.
Herein, the Town Justice seeks to base his refusal to wait for the newspaper’s attorney upon the highly charged, emotional atmosphere which he perceived to be present. In this regard, it must be emphasized that tension in a courtroom is not, by itself, sufficient to warrant total closure. It is the duty of a court to require adequate safety precautions or lesser alternatives to full exclusion. Having articulated a First Amendment guarantee to access, we must ensure its viability, particularly in a highly emotional case. The threat of "mob rule” should strengthen our resolve to protect the constitutional guarantees of all concerned, for it is those very situations, difficult though they may be, which are the litmus test of our system of rights and freedoms.
Even before recognition of the constitutional right of access to such proceedings, it was required that prior to closure, members of the news media should have an opportunity to be heard. For instance, it was specifically held that prior to issuance of any order which would impose prior restraint upon the press, due process required a hearing, "on notice to the parties and the press” (Matter of New York Times Co. v Starkey, 51 AD2d 60, 65). Similarly, in Matter of Gannett Co. v De Pasquale (55 AD2d 107, 112), the Appellate Division recognized "a due process right to notice and a hearing prior to the entry of exclusionary orders which are directed at the press to prevent the publication of matters prejudicial to the defendant in a criminal proceeding.” The court specifically held that such rights should be accorded whenever a court "contemplates entering an exclusionary order for the purpose of suppressing pretrial publicity deemed prejudicial to the defendant.” (Supra, at 112.)
"The fundamental requirement of due process of law is the opportunity to be heard” (Grannis v Ordean, 234 US 385, 394). Due process is satisfied only if that opportunity is provided "at a meaningful time and in a meaningful manner.” (Armstrong v Manzo, 380 US 545, 552.) Thus, in Matter of Johnson Newspaper Corp. v Parker (101 AD2d 708, supra), it was determined that the Justice Court’s failure to allow the media to be represented by counsel denied it the opportunity to be heard in a meaningful manner.
Prior to the articulation of a constitutional underpinning *499 for the right of public access, courts were required to "determine the magnitude of any genuine public interest [which] may be found to outweigh the risks of premature disclosures.” (Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 381.) This balancing of interests is no longer required. Regardless of the "magnitude” of public interest, the right to be present is constitutionally ensured, limited only by the defendant’s constitutional right to a fair and impartial trial by a jury of his or her peers. As such, the decibel level of public awareness is relevant in determining closure motions only to the extent that it will impact on the defendant’s right to an impartial jury, and the only ground upon which closure may be premised is a specific finding of a "substantial probability” that such right will be impaired. As such, the media no longer needs to articulate a public need to be balanced against the defendant’s desires for anonymity.
Presence of counsel, if requested by a member of the media or public, should be strongly encouraged. While there might be instances when circumstances dictate otherwise, all avenues should be explored prior to total closure of the hearing without granting such a request. For instance, where there has been no prior notice, access might be limited to specific individuals who would stipulate to nondisclosure, subject to being heard on the motion through counsel at a later date. In such a circumstance, both the right of access and the right of a fair trial could be protected.
In an area of acknowledged constitutional evolution, the burden of establishing the necessity for closure now lies squarely upon the defendant, and the presumption of access now lies squarely within the First Amendment. In the case at bar, it is evident that the defendant did not meet that burden. The court shall declare that the failure of respondent to afford petitioner the right to be heard through counsel prior to determination of the motion to close the Wyley Gates preliminary hearing held January 6, 1987 in the Canaan Town Justice Court was arbitrary and capricious and resulted in a denial of due process.