THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ANTHONY BURTON, Respondent. OTTAWAY NEWSPAPERS,
INC., Appellant.

Third Department, May 6, 1993

## APPEARANCES OF COUNSEL

*Van DeWater & Van DeWater,* Poughkeepsie *(James E. Nelson* and *Juliana Maugeri* of counsel), for appellant.

*Stephen F. Lungen, District Attorney* of Sullivan County, Monticello, for The People of the State of New York, respondent.

## OPINION OF THE COURT

Levine, J.

Ottaway Newspapers, Inc. is the publisher of the Times Herald Record (hereinafter the Record), a newspaper of general circulation in Sullivan County and surrounding counties. The Record had reported extensively regarding the brutal murder in early July 1991 of an elderly Hasidic husband and wife who had just recently moved into a bungalow colony in Sullivan County for that summer. An intensive search for the killer was launched involving multiple police agencies which ultimately led to the arrest about six weeks later of defendant, a kitchen worker at a resort hotel near the bungalow colony where the victims were staying. The case engendered widespread notoriety and news media attention in both Sullivan County and in Brooklyn, where the couple had been permanent residents. Renewed media focus on the case occurred in September 1991 when an indictment was handed up charging defendant not only with the two murders, but also the forcible rape of the female victim.

By June 1992, the case against defendant had proceeded through the pretrial motion and discovery stages to the point

where hearings were scheduled on the admissibility of any inculpatory statements and of DNA evidence allegedly identifying defendant as the perpetrator. Defendant's trial was scheduled for the early fall following the completion of those hearings. At that point, one of the Record's reporters assigned to cover the proceedings against defendant sought access to County Court's file on the case. Access was refused, purportedly pursuant to Civil Rights Law § 50-b, which creates a right of privacy for the victims of sexual offenses and prohibits the disclosure of any documents identifying the victim of a sex offense. The Record then brought the instant application for access to the court files in defendant's case, subject to redaction of the rape victim's name and any identifying information. The People and defendant opposed the application, claiming that disclosure is prohibited by Civil Rights Law § 50-b and would deprive defendant of a fair trial. They also requested closed hearings on the admissibility of defendant's confession and the DNA evidence.

By decision and order of June 30, 1992, County Court denied the request to close the hearing on the DNA evidence, concluding that there had been no showing of any substantial probability of prejudicial publicity that would deny defendant a fair trial, as required by *Matter of Associated Press v Bell* (70 NY2d 32) in order to overcome the First Amendment rights of the public and the news media to open pretrial hearings in criminal cases. However, by decision and order dated July 21, 1992, County Court denied the Record's application for access to the court file in the case and specifically directed the sealing of various documents contained therein, including crime scene descriptions, autopsy reports and defendant's statements supplied pursuant to CPL 710.30. The Record now appeals.

■ There should be a reversal. The People argue, with commendable zeal, that Civil Rights Law § 50-b should be construed to protect against injury to the personal and religious sensibilities of the murdered rape victim's family that would result from public disclosure of the details of the sexual assault committed against her. Nonetheless, there is nothing in the statutory language of Civil Rights Law § 50-b or its legislative history suggesting any legislative intent to create statutory rights beyond the personal right of a sex offense victim to confidentiality of his or her identity. Thus, we are constrained to conclude that, as a result of the victim's death and the previous disclosure of her identity thereafter, Civil

Rights Law § 50-b cannot be invoked to justify nonaccess to the court files in the instant case. A broader construction of Civil Rights Law § 50-b flatly mandating denial of public access to court documents in all sex offense cases would raise serious constitutional questions under the First Amendment *(see, Globe Newspaper Co. v Superior Ct.,* 457 US 596, 608-610). We should avoid such an interpretation of the statute if possible *(see, Loretto v Teleprompter Manhattan CATV Corp.,* 58 NY2d 143, 149; *People v Nieves,* 36 NY2d 396, 400).

■ Nor is denial of access to the court files sought by the Record sustainable on the ground that it is required to avoid prejudicing defendant's right to a fair trial. County Court's decision and the submissions by the People and defendant upon which it was based are not explicit in identifying the manner in which the documents ordered sealed became part of the court files. To the extent that the documents were submitted in connection with contested motions, the hearing of which were or would be accessible to the news media and the public, a qualified First Amendment right of access to them would also apply *(see, United States v Haller,* 837 F2d 84, 87; *Matter of New York Times Co.,* 828 F2d 110, 114, *cert denied sub nom. Esposito v New York Times Co.,* 485 US 977). It would appear that at least some of the documents fall in that category. That being so, the applicants for sealing the records were required to demonstrate, and County Court was required to make specific findings supporting its conclusion, that (1) there is a *substantial probability* that defendant's right to a fair trial will be prejudiced by publicity that sealing would prevent, and (2) reasonable less restrictive alternatives to sealing cannot adequately protect defendant's fair trial rights *(see, Press-Enter. Co. v Superior Ct.,* 478 US 1, 12-13; *Washington Post v Robinson,* 935 F2d 282, 289-290; *Matter of Associated Press v Bell,* 70 NY2d 32, 39, *supra).*

On the other hand, there may be other documents (e.g., discovery materials) that, at least arguably, are only subject to the common-law right of access to court records *(see, Nixon v Warner Communications,* 435 US 589, 597-598). New York recognizes such a common-law right of access *(see, Matter of Newsday, Inc. v Sise,* 71 NY2d 146, 153, n 4, *cert denied* 486 US 1056). There is, however, a dearth of New York cases applying the common-law right of access and, therefore, we look to Federal decisional law for instruction on its substantive and procedural requirements. There is a common-law presumption in favor of public access to court records *(see,*

*Nixon v Warner Communications, supra,* at 602). Thus, the burden is on those seeking to seal records to show that the public's right of access is outweighed by competing interests. Specificity of proof and of judicial findings are required, and a trial court must also consider less drastic alternatives to sealing the records which would adequately serve the competing interests *(see, In re Baltimore Sun Co. v Goetz,* 886 F2d 60, 65-66; *In re Knight Publ. Co.,* 743 F2d 231, 235). Where, as here, the interest favoring nonaccess is a criminal defendant's right to a fair trial, sealing may only be ordered upon a showing of . a *reasonable likelihood* that the publicity from disclosure of the records would render it impossible to obtain a fair and impartial jury *(see, United States v Martin,* 746 F2d 964, 970). Finally, although a trial court's determination to deny enforcement of the common-law right of access in a given case is considered a discretionary decision *(see, Nixon v Warner Communications, supra,* at 599), it rarely involves credibility determinations and, thus, is fully subject to review on appeal as to whether the sealing court properly identified and weighed all relevant factors *(see, United States v Martin, supra,* at 967).

In our view, the submissions in this case by the People and defendant, and the findings made by County Court, are clearly insufficient to support the sealing of court files that was ordered under either the standard for denying a First Amendment right of access or the standard for denying the common-law right of access. Notably, the only specific risk of prejudicial publicity identified in either the People's or defendant's submissions in support of sealing the files was the possibility that potential jurors would be swayed by any publicizing of the DNA identification reports filed with County Court. Thus, County Court's determination of the prejudicial effect of all other documents in the court's files is totally lacking in any support in the record, aside from bare conclusory assertions *(see, Matter of Associated Press v Bell, supra,* at 39). Moreover, any conclusion that prejudice would result from the Record's access to and publication of the DNA identification reports in County Court's files is completely undercut by County Court's earlier (and in our view valid) decision denying closure of the pretrial hearing to be conducted regarding the admissibility of the DNA identification evidence. There is no demonstration whatsoever in County Court's decision that publication of the DNA reports that are in the court file will prejudice defendant more than the disclosure of the same materials and informa-

tion during the hearing to be held in closer proximity to the trial *(see, In re Charlotte Observer,* 882 F2d 850, 854-855; *see also, Washington Post v Robinson, supra,* at 292).

For all the foregoing reasons, the order denying the Record access to court files herein should be reversed and the Record's application for access to the documents in the file, in the redacted form that it requested, should be granted.

WEISS, P. J., MIKOLL, YESAWICH JR. and CASEY, JJ., concur.

Ordered that the order is reversed, on the law, without costs, application granted and matter remitted to the County Court of Sullivan County for further proceedings not inconsistent with this Court's decision.