OPINION OF THE COURT
Michael R. Juviler, J.
This is a written version of a decision that was delivered from the Bench denying a motion by the defendant to seal a document contained in the court file of his case. The document is known as the voluntary disclosure form, which the People served upon the defendant at the arraignment on the indictment and filed with the court at the same time. The significant portion of this document is a copy of the defendant’s handwritten and signed confession, which forms part of the notice to the defendant, required by CPL 710.30, of the People’s intention to use a statement of the defendant as evidence.
The defendant has been indicted for two counts of murder in the first degree, relating to the deaths by stabbing of a woman and her four-year-old son. The District Attorney is currently considering whether to seek the death penalty.
The defendant contends that the filing of the confession with the court was not required by law, and that disclosure of the confession would create a substantial risk of prejudice to the defendant at a trial, particularly if the confession is suppressed by the court at a pretrial hearing (Huntley hearing). The People oppose the motion, citing a common-law right of access to court files, and the First Amendment.
*114 So that the present litigation on this issue would not become moot, the court removed the confession from the court file pending this decision.[1]
THE CONFESSION AS PART OF THE COURT FILE
The first question raised by the defendant’s motion is whether the voluntary disclosure form, and more particularly, the handwritten confession, should be considered an official part of the court file. If it is not part of the court file, there is no right of access to it.
There is no statute or administrative rule that states whether a confession in a CPL 710.30 notice is part of the court file in a criminal action.[2]1 find that it is.
The document was officially received, accepted, filed, and preserved by the court in accordance with a regular practice by which the People file with the court at arraignment the statutorily required notice of the District Attorney’s intention to use a statement of the defendant as evidence. Although the CPL merely requires the People to "serve” the notice and does not require filing of it (CPL 710.30 [1]), the practice of the court is to receive and preserve such documents as part of the court file.
*115 There are compelling reasons for the court to continue this practice, even though the filing of these documents is not required by statute.
Failure to comply with the statutory requirement of giving notice, within 15 days of arraignment, of the People’s intention to use a statement of the defendant, or failure to include in that notice the "sum and substance” of the statement, has an important consequence: preclusion of the statement as evidence at a trial. (CPL 710.30; People v O’Doherty, 70 NY2d 479; People v Reed, 84 NY2d 945.) The filing and preservation of the document aids the court by providing an indisputable record of the timeliness of the notice.
Filing with the court the complete contents of a statement— such as by filing a copy of the statement — also obviates litigation, all too common in the courts of New York, on whether the People have provided the defense with the "sum and substance” of the statement. (See, for example, People v Reed, supra; People v Greer, 42 NY2d 170; People v Brooks, 121 AD2d 392; People v Reid, 215 AD2d 507, lv denied 86 NY2d 846; People v Miller, 171 AD2d 697.)
An additional purpose served by the filing and preservation of such a document as part of the court file is to aid the court in its evaluation of the case, thereby facilitating the court’s participation, where appropriate, in plea negotiations. Filing also aids in the court’s planning of future proceedings, included hearings, because service of the notice of the People’s intention to use the statement as evidence triggers the defendant’s right to a Huntley hearing. (See, CPL 710.30 [3].)
Thus, although filing of the notice is not required by statute, filing serves significant judicial purposes and public policies. I therefore consider this document part of the court file in this action. (See, People v Sullivan, 168 Misc 2d 803, 808-811; cf., People v Burton, 189 AD2d 532, 535; People v Christopher, 109 Misc 2d 767; United States v Amodeo, 44 F3d 141, 145 [2d Cir].)
STATUTES OR RULES ON DISCLOSURE OF COURT FILES
There is no administrative rule requiring disclosure to the press and public of a notice of intention to use a confession, or of any other part of the court file in a criminal action.[3] Nor is there a statute whose language explicitly requires disclosure of the file.
*116 The Freedom of Information Law, requiring access by the public and press to public records, exempts records of "the courts of the state”. (Public Officers Law § 86 [1], [3], [4].) The Judiciary Law does not specifically require disclosure of the entire contents of a CPL 710.30 notice or of any other paper filed with the court; it provides that a court clerk’s "docket-book” is public. (See, Judiciary Law § 255-b.) Judiciary Law § 255 does not expressly provide for disclosure of the entire contents of documents in court files; it provides that on request the clerk must search the files and prepare a certified "transcript” — a term consistent with an inventory — from the files.
These Judiciary Law sections have been interpreted, however, to require public access to all nonconfidential material in the court’s files. (See, Matter of Werfel v Fitzgerald, 23 AD2d 306; People v Christopher, supra; see also, Matter of Cline v Board of Trustees, 76 Misc 2d 536, 540-541, affd 45 AD2d 823.)
Public access is subject to specific statutes or rules requiring confidentiality of certain court records. (See, for example, CPL 390.50, limiting disclosure of probation reports and presentence memorandums; Civil Rights Law § 50-b, providing for confidentiality of the names of victims of alleged sex offenses; CPL 190.25 [4] and Penal Law § 215.70, requiring confidentiality of Grand Jury minutes; and 42 USC § 3789g [b] and 28 CFR part 20, requiring confidentiality of defendants’ criminal history records.) But among the many laws and regulations providing for confidentiality of specified portions of court files, none forbids disclosure of a voluntary disclosure form or a notice provided under CPL 710.30.
The defendant has cited the rule of professional conduct that forbids a prosecutor from making a public statement concerning the "existence or contents of any confession, admission, or statement given by a defendant”. (See, Code of Professional Responsibility DR 7-107 [B] [2] [22 NYCRR 1200.38 (b) (2)].) That rule does not govern papers filed with the court; it relates only to "extrajudicial” statements. (Code of Professional Responsibility DR 7-107 [A], [B] [22 NYCRR 1200.38 (a), (b)].) I find that the filing of the confession in the present case was done in accordance with a beneficial uniform practice and was not a device to avoid that disciplinary rule. Therefore, public disclosure of the confession in the court file is not barred by Code of Professional Responsibility DR 7-107 (B) (2) (22 NYCRR 1200.38 [b] [2]).
*117 THE INHERENT POWER OF THE COURTS TO SEAL RECORDS
Public access to court files is subject to the inherent power of the courts to regulate access and to bar it in appropriate cases. (Matter of Crain Communications v Hughes, 74 NY2d 626; Matter of Hynes v Karassik, 47 NY2d 659, 664.) That power to bar access is limited, however, by judicial decisions, which create a presumption in favor of public and press access to files of the court.
THE COMMON-LAW RIGHT OF ACCESS
This presumption takes the form, first, of a common-law right of access by the public and the press to nonconfidential documents in the court file. (Nixon v Warner Communications, 435 US 589; Matter of Newsday, Inc. v Sise, 71 NY2d 146, 153, n 4, cert denied 486 US 1056; People v Burton, 189 AD2d 532, supra; People v Sullivan, 168 Misc 2d 803, supra.) As a reason to deny that right, the defendant alleges the possibility of prejudice if the confession is made public and later is suppressed at a hearing. Because of the First Amendment, however, that possibility is insufficient to allow sealing of the confession.
THE FIRST AMENDMENT RIGHT OF ACCESS
I find that there is a right under the First Amendment of access by the press to nonconfidential court records, such as the defendant’s confession. (Contra, People v Sullivan, supra; cf., People v Burton, supra, at 535.)
That would be true if the confession had been submitted to the court as part of a contested motion. (People v Burton, supra, at 535; People v Sullivan, supra.)
On the present record, the press also would have under the First Amendment a right (often called a "qualified right”) to attend a hearing on a motion to suppress the confession and to obtain a transcript of the hearing. (Matter of Associated Press v Bell, 70 NY2d 32.) This is so even though the hearing might result in suppression of the statement as evidence, and even though publication might make it more difficult to select an impartial jury. The court may not close a Huntley hearing to the press on the "possibility” that tainted, suppressed, nonpublic evidence might impair the selection of an impartial jury. (Supra, at 40.)
To justify closing a Huntley hearing, the defendant must demonstrate " 'that first, there is a substantial probability that the defendant’s right to a fair trial will be prejudiced by public *118 ity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant’s fair trial rights.’ ” (Matter of Associated Press v Bell, supra, at 39, quoting Press-Enterprise Co. v Superior Ct., 478 US 1, 14; see also, Matter of Capital Newspapers Div. of Hearst Corp. v Moynihan, 71 NY2d 263; Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, supra.) No such demonstrations have been made in this case.
With respect to the First Amendmént right of access, there appears to be no significant distinction between a Huntley hearing and the confession as it sits in the court file in anticipation of the hearing. Moreover, sealing of the confession would be arbitrary, in the context of Matter of Associated Press v Bell (supra) and the other cases prohibiting closure of the hearing.
Although this case involves not a hearing or other proceeding, but papers that lead to a hearing, the court has applied to the court file the above-cited holdings relating to hearings. The court has therefore considered whether there are "reasonable alternatives to closure” of the file that can adequately protect the defendant’s right to a fair trial.
One of the obvious alternatives to closure is to conduct at the trial a comprehensive and searching voir dire of the prospective jurors. (See, Matter of National Broadcasting Co. v Cooperman, 116 AD2d 287, 293.)
Another is to allow public attention to subside before the trial. That interval is built into this case, since a trial is not imminent and, given the practicalities of the marketplace of ideas, the earlier the disclosure of the confession, the less likely it is to be prominently publicized at the time of the trial. In any event, there is no authority for denying public or press access to the statement at this stage of the proceedings, because the statement is part of the court file, and the defendant has not demonstrated a need to override the First Amendment.
As another reasonable alternative to closure of the file, the court also considers it appropriate to provide that the access to the file will not include the opportunity to photograph or otherwise photocopy the handwritten confession. The full text of the confession is available for inspection, without time limit, but that access will be a traditional one of inspection of the file, in the courtroom or other place designated by the court, with no limit on the opportunity to note the contents of the file, but not including a right to bring a camera or other copying device to the court to copy the confession.
There is a notable difference between inspecting the text of the confession and photographing the confession for display in *119 the newspapers or on television. Potential prejudice to the defendant would be increased by publication of a picture of his handwritten confession. The appearance of a confession in a defendant’s own handwriting heightens its impact on the reader’s or viewer’s memory and emotions, particularly in this case, for the defendant concluded the statement by writing in large capital letters that what he had done was "WRONG”.
The potential for prejudice in publication even of the text of a confession — without a picture of it — is noted in the Code of Professional Responsibility, which states that a public announcement by a prosecutor ordinarily is likely to prejudice materially an adjudicative proceeding if the public announcement relates to a statement given by a defendant. (See, Code of Professional Responsibility DR 7-107 [B] [2] [22 NYCRR 1200.38 (b) (2)].) The same potential for prejudice was recognized by the New York Fair Trial Free Press Conference, in its statement of Free Press-Fair Trial Principles and Guidelines for the State of New York (guideline 2):
"The release of certain types of information by law enforcement personnel, the bench and bar and the publication of this information by news media, may tend to create dangers of prejudice without serving a significant law enforcement or public interest function. Therefore, all concerned should be aware of the dangers of prejudice in making pretrial disclosure of *^* *^* ^
"Admissions, confessions or the contents of a statement attributable to an accused person.”[4]
The appellate cases discussed above constrain the court on the facts of this case to tolerate this risk by allowing press access to a handwritten confession in the court file; however, to reduce the risk the court may consider reasonable alternatives to closure. The court has therefore decided to allow access to the confession but to prohibit photocopying or photographing.[5]

. Thereafter, eight days before the court’s announcement of this decision from the Bench, The Daily News and a reporter for The Daily News asked the court to initiate an intervention by the newspaper and the reporter, by an order to show cause returnable after the scheduled announcement of this decision. The court concluded that this intervention would be unnecessary because the court had decided that it was going to grant access by the press to the document that is now at issue. Therefore, the court was not required to give the newspaper an opportunity to be heard, since that is required only if the court is considering denying access. (See, Matter of Westchester Rockland, Newspapers v Leggett, 48 NY2d 430; Matter of Associated Press v Owens, 160 AD2d 902.)

. Compare, Uniform Rules for Trial Courts (22 NYCRR) § 216.1 ("Sealing of Court Records in Civil Actions in the Trial Courts” [emphasis supplied]):
"(a) Except where otherwise provided by statute or rule, a court shall not enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof. In determining whether good cause has been shown, the court shall consider the interests of the public as well as of the parties. Where it appears necessary or desirable, the court may prescribe appropriate notice and an opportunity to be heard.
"(b) For purposes of this rule, 'court records’ shall include all documents and records of any nature filed with the clerk in connection with the action. Documents obtained through disclosure and not filed with the clerk shall remain subject to protective orders as set forth in CPLR 3103(a).”

. Compare, 22 NYCRR 216.1, quoted in n 2, supra, relating to openness of court files in civil actions.

. Cf., NY Times, Mar. 2, 1997, at 24, col 1 (News Article on Bombing Raises Fears for Fair Trial). The Times reported that the Dallas Morning News had published the contents of an alleged confession by one of the alleged Oklahoma City bombers, Timothy J. McVeigh, to his lawyer.

. I am indebted to my colleague Hon. Anne G. Feldman for this idea.