OPINION OF THE COURT
Marcy L. Kahn, J.
On September 16, 1998, the People, joined by defendant, made an oral application at the pretrial conference conducted by this court to seal the moving papers, responses and decisions of the court relating to the People’s application to introduce evidence at trial pursuant to People v Molineux (168 NY 264 [1901]), and People v Sandoval (34 NY2d 371 [1974]), of uncharged criminal, vicious or immoral acts allegedly committed by defendant. The parties’ moving and opposition papers on the motions were submitted to the court in chambers and were not filed in the court file, pending the court’s resolution of both the substantive motions and the sealing application. After hearing the parties, the court ordered that the moving papers, responses and decisions be sealed.[1] This written opinion explains the court’s oral ruling.
The First Amendment guarantees the public and the press a qualified right of access to criminal trials. (Richmond Newspapers v Virginia, 448 US 555 [1980].) The New York Court of Appeals has made clear that all court proceedings are presumptively open to the public and press (Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430 [1979]), including pretrial suppression hearings (Matter of Associated Press v Bell, 70 NY2d 32 [1987]; Matter of Gannett Co. v De Pasquale, 43 NY2d 370 [1977], affd 443 US 368 [1979], supra) and Sandoval hearings (Matter of Capital Newspapers Div. of Hearst Corp. v Clyne, 56 NY2d 870 [1982]).
To the extent that documents are submitted to the court in conjunction with a contested motion, the hearing of which is accessible to the press and public, a qualified right of access under the First Amendment also has been recognized in New *421 York. (People v Burton, 189 AD2d 532, 535 [3d Dept 1993] [Levine, J.].) New York has also recognized a common-law right of access to court records, deriving from Federal decisional law (supra, citing Nixon v Warner Communications, 435 US 589 [1978], and Matter of Newsday, Inc. v Sise, 71 NY2d 146, 153, n 4 [1987], cert denied 486 US 1056 [1988]), and under which the public has a presumptive right, subject to the court’s exercise of sound discretion, to view all nonconfidential material in the court’s file. (See, Matter of Werfel v Fitzgerald, 23 AD2d 306 [2d Dept 1965].) That doctrine need not be considered here, however, where the higher standard applying to limitations on the First Amendment right of access to motion papers is at issue. (See, People v Hodges, 172 Misc 2d 112 [Sup Ct, Kings County 1997].)
This right of access is not absolute, however, and may be limited where necessary to preserve a defendant’s Sixth Amendment right to a fair trial. (Sheppard v Maxwell, 384 US 333 [1966].) A trial court has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity prior to and during a trial (supra), and may take protective measures to ensure the defendant’s rights to due process and an impartial jury. (Gannett Co. v DePasquale, 443 US 368, supra.)
Our Court of Appeals has characterized the performance of this constitutional duty as involving a balancing of the competing interests in the case: “Fairness to the accused does not mean that the community should be totally ignorant of his activities, or that he is entitled to a jury composed only of those who have no knowledge of the case or his character and prior involvements with the law [citations omitted]. But the accused should not be required to face trial in open court only after he has already been convicted in a ‘trial by newspaper’, particularly when the newspaper accounts include highly prejudicial evidence which would be inadmissible at trial [citation omitted].” (Matter of Westchester Rockland Newspapers v Leggett, supra, at 438.)
Before the right of public access to judicial documents may be limited, however, the court must be convinced that the accused’s right to a fair trial creates an overriding interest which would be jeopardized in the absence of sealing. The parties seeking closure bear the burden of demonstrating (1) the existence of a substantial probability that public disclosure of the information will prejudice the defendant’s right to a fair trial, which will be prevented by sealing the documents; (2) that reasonable alternatives have been considered and cannot ad *422 equately protect defendant’s rights; and (3) that the closure is narrowly tailored to serve the asserted interests. (People v Burton, supra, 189 AD2d, at 535; see, Press-Enterprise Co. v Superior Ct., 478 US 1, 14 [1986] [Press-Enterprise II]; Matter of Associated Press v Bell, supra.)
Here, of course, the courtroom has been and will continue to be open to the press and public at all times, and transcriptions of the proceedings have been furnished to the press when requested. The question at hand is whether the parties’ motion papers and the court’s decisions resolving the evidentiary issues presented by them should be barred from public view.
In general, Molineux and Sandoval motions, like pretrial suppression motions, are litigated in open court and any written submissions, as well as the court’s ruling, become part of the court record. In contrast to suppression hearings, however, where the public has a particular interest in challenges to the conduct of the police and prosecutor (see, Matter of Associated Press v Bell, supra, at 38), such considerations are not pertinent when considering closing a Molineux or Sandoval proceeding.
With respect to the Molineux motion, the prosecutor’s application comprises three categories of information about alleged uncharged crimes and bad acts of the defendant. The first category consists of information which derives in part from sources which have been sealed by statute. The remaining portion of that information, along with the information under seal, has been held by this court in its Molineux decision (rendered today) to be inadmissible pursuant to People v Ventimiglia (52 NY2d 350 [1981]). The second category of information contained in the People’s Molineux motion derives from statements allegedly made by the defendant. This evidence was also ruled inadmissible for the purposes for which the People were seeking to introduce it. This information, however, has already been made public through documents filed in the court file and as the subject of testimony at defendant’s Huntley hearing, which was open to the press and public. The third category of information sought by the prosecution for admission under Molineux involves uncharged crime evidence, which also was ruled inadmissible as more prejudicial than probative for the purposes for which the People sought to offer it.
As to the Sandoval application, it, too, consists entirely of uncharged alleged criminal, vicious and immoral conduct by defendant. The majority of the evidence which the People seek to use to impeach defendant’s credibility derives from records *423 which are confidential under the law.[2] The People renew under Sandoval the application made on Molineux grounds to introduce portions of defendant’s statements to police which were made public (and for which a sealing order was denied) from the time of defendant’s arraignment in this case. While the court has not yet ruled on defendant’s Sandoval application, once that ruling is issued, none of the information reviewed by the court, whether or not held to be admissible, will ever be introduced or have any relevance for the case unless defendant chooses to testify in his own defense, a course of action which will remain open to him throughout the trial, but which his counsel has characterized as a “highly unlikely event”. Should he testify, however, the portion of the Sandoval motion which the court grants, if any, will be the subject of testimony in open court and may be reported by the press contemporaneously with its occurrence.
Applying the Press-Enterprise II standard, the court must first consider whether there is a substantial probability that disclosure of the information in the Molineux and Sandoval motions will jeopardize defendant’s right to a fair trial, which could be prevented by the sealing of the motion papers and decisions. As was noted in this court’s July 3, 1997 ruling on defendant’s earlier sealing motion,[3] this case, involving allegations of a murder and torture robbery by a former student of a public high school teacher whose father heads one of the world’s largest media conglomerates, has understandably generated intense media scrutiny and an enormous amount of pretrial publicity all over the world. All of the major newspapers in this city, as well as national and local radio and television newscast *424 ers and news magazine reporters, have followed the case and appear likely to continue to do so. Defense counsel reported hundreds of “hits” on the Internet about the case, even before the defendant’s arraignment.
The information contained in the Molineux and Sandoval motions consists entirely of information which is prejudicial to defendant, i.e., uncharged criminal, vicious and immoral acts allegedly committed by defendant on other occasions. Some of the information is highly inflammatory. Most of the information derives from sources which are by law confidential and not subject to public scrutiny. In addition, the information submitted on the Molineux motion has already been judicially determined to be inadmissible. Should the defendant not testify at trial, the information included in the Sandoval motion will similarly be excluded from admission at trial. Furthermore, any of the confidential information ruled inadmissible on these motions will retain its confidential status.
Accordingly, these documents fall squarely within the realm of records as to which access may be constitutionally restricted under People v Burton (189 AD2d 532, supra). Provision of access to these documents is neither inherent in our tradition of public access to court records, nor productive in aiding the public in understanding the ongoing criminal adjudicative process. (See, United States v McVeigh, 119 F3d 806, 811-813 [10th Cir 1997], affg 918 F Supp 1452, 1464 [WD Okla 1996] [Matsch, Ch. J.], cert denied sub nom. Dallas Morning News v United States, — US —, 118 S Ct 1110 [1998] [confidential and inadmissible documents are not covered by First Amendment right of access].) Evidence which is inadmissible at the trial is, as the 10th Circuit explained in McVeigh, “simply irrelevant to the process”, and its disclosure “would play a negative role in the functioning of the criminal process, by exposing the public generally, as well as potential jurors, to incriminating evidence that the law has determined may not be used to support a conviction.” (United States v McVeigh, 119 F3d, at 813; see, People v Arroyo, 177 Misc 2d 106 [Schoharie County Ct 1998].) There is an acute risk in a case which has received as much media attention as this one has that the media coverage of the highly prejudicial information contained in these motions could overwhelm the coverage of the court proceedings of record, in violation of both defendant’s right to an impartial jury panel and the State’s policy against disclosure of certain types of confidential information, and perversely have the effect of broadcasting to the jury pool on the eve of trial the very evi *425 dence which the court in its Molineux and Sandoval rulings has held to be too prejudicial for the jury to hear. (Matter of Westchester Rockland Newspapers v Leggett, supra, 48 NY2d, at 439.)
Clearly, publication of this information at this time would serve no purpose other than to arouse negative public sentiment toward the defendant and would have a devastating effect on defendant’s ability to select an impartial jury. As the October 8, 1998 date for jury selection in this case approaches, the risk to defendant’s ability to select an impartial jury increases. (See, Matter of Johnson Newspaper Corp. v Clary, 167 AD2d 968 [4th Dept 1990], appeal dismissed 77 NY2d 889 [1991].) Applying the Press-Enterprise II standard to the present case, there can be no doubt that defendant’s right to an impartial jury is paramount to the public right of access in this situation and requires sealing of those documents for its meaningful preservation. (See, Matter of Associated Press v Bell, supra, 70 NY2d, at 38-39; Matter of Gannett Co. v De Pasquale, 43 NY2d 370, supra.)
Furthermore, maintaining the motion papers and decisions under seal is the only means available for avoiding the tainting of the jury pool. The jury selection process in this case will likely be lengthy, due to the extensive amount of pretrial publicity which has been and continues to be generated in this case. Jury selection is scheduled to commence within two days’ time and 1,000 jurors have been summoned to appear, eliminating the possibility that a change of venue or postponement of the trial could mitigate the effects of any unfavorable publicity. As the trial is projected to continue for six weeks, sequestration of the jury for the duration of the trial would create undue hardship for the jurors, while further protracting the jury selection process. Any measure short of sealing those documents, including the most probing voir dire followed by the clearest jury instruction, could not effectively eliminate the prejudicial impact on the jury of the publication of defendant’s alleged uncharged bad acts in this case.
Finally, no other effective approach to protecting defendant’s Sixth Amendment rights would be less burdensome to the public’s right of access. Only inadmissible evidence which would prejudice defendant’s right to a fair trial without furthering any understanding of the adjudicative process is being withheld from public scrutiny. Any evidence which becomes admissible will be made known to the press and public in open court. Thus, this sealing order is designed to be as narrow as *426 possible to avoid any interference with the First Amendment right of access other than that which is essential to prevent serious prejudice to defendant.
Accordingly, all submissions of the parties and the decisions of the court on the People’s Molineux and Sandoval motions shall remain under seal, except to the extent that this court grants any aspect of the People’s Sandoval motion and the defendant chooses to testify at trial.

. At all times during the pretrial conference, the proceedings were conducted on the record, in open court. Representatives of the press had received notice of the pretrial conference, as well as advice that the Molineux and Sandoval applications would be addressed at that time, although at the time such notice was conveyed, the sealing application had not yet been made. No media representatives chose to attend the conference. Copies of this decision will be made available to the press and in the event that any representatives of the press inform the court of a desire to be heard on the issue of sealing, they will be reasonably accommodated. (See, Gannett Co. v DePasquale, 443 US 368 [1979]).

. A listing of the statutory provisions which render this information confidential would defeat the purpose of this sealing order, and need not be disclosed on this motion. (Matter of Associated Press v Bell, supra, 70 NY2d, at 39; Matter of Westchester Rockland Newspapers v Leggett, supra, 48 NY2d, at 442.)

. I previously denied a closure motion made by defendant at arraignment (and unopposed by the People) to seal the voluntary disclosure form containing his pretrial statements (People v Arthur, Sup Ct, NY County, July 3, 1997, index No. 4376/97 [oral ruling]). In that situation, the potential derogation of defendant’s Sixth Amendment rights arising from the public disclosure of damaging and potentially inadmissible information was mitigated by the fact that the trial would not be held for many months, thereby dissipating the effects of any adverse pretrial publicity. The present motion is, by contrast, being litigated on the eve of trial. Additionally, on the earlier motion the defense conceded that the statements defendant sought to seal would ultimately be disclosed to the public when he moved to. suppress them.