OPINION OF THE COURT Robert B. Wiggins, J. L The issue to be resolved here is whether the press should be granted immediate access to motion papers, involving suppression issues, in a case that has generated significant publicity. The First Amendment to the Constitution of the United States guarantees, among other things, freedom of the press. The Sixth Amendment to the Constitution of the United States guarantees to the accused “the right to a speedy and public trial, by an impartial jury” (emphasis supplied). This case presents a classic situation where there is, or at the very least there is the significant potential for, a direct conflict between these two important rights. Defendant stands accused of homicide, one of the most serious charges that can be levied against a citizen, and her right to a fair trial on such a serious charge should be entitled to great weight. And circumstances, some related to the nature of the crime and some not, have made it such that the press, both locally here in Livingston County and regionally in the greater Rochester area, has taken an interest in the case well above and beyond that of most criminal trials in this county. This, in turn, has brought these two important constitutional rights into direct conflict because in this court’s view, based upon a lifetime spent in this county, the pretrial publicity surrounding this case presents a significant impediment to ultimately selecting a fair and impartial jury. Faced with such a collision of rights, courts of necessity must strike a balance and determine whose rights are paramount. If it were up to this court, the balance would come down firmly on the side of the right of the defendant, and the People as well, to a fair trial, and the court would deny access, at least pending the upcoming suppression hearing. But as a trial court, I am bound to apply the “wisdom” of higher appellate courts, and under their precedent, it is clear that the right of the press to access at this juncture must win out. 1—I HH Defendant stands accused of second-degree manslaughter (Penal Law § 125.15 [1]) in connection with the stabbing death of a man with whom she was having a relationship. From the beginning the case has garnered substantially above average interest from media outlets both here in Livingston County as well as in Rochester, stemming no doubt from the nature of the case as well as defendant’s close family ties to law enforcement. In addition, the local court justice who initially arraigned defendant excluded everyone—public and press alike—from the proceedings, which no doubt has had the backlash effect of provoking more media coverage. There have been several articles in the local papers, and television, coverage at every appearance before this court which, to say the least, is out of the ordinary in this county. Prior to the first appearance following defendant’s arraignment, there was a request by various media outlets to access the motion papers filed in the case. This court reserved decision on those applications, in part because additional submissions were to be filed, and the court wanted to examine them all as a whole before reaching a determination. Prior to and at the latest appearance, for motion argument, the requests were renewed, and the court gave both the parties, and any news outlets that wished to be heard, an opportunity to put their positions on the record. While neither party has brought a formal sealing motion, both the People and defendant asked that the motion papers not be released. The People argued vaguely that they did not want the case tried in the press, while defense counsel cited defendant’s right to a fair trial and the possible prejudice to his client’s case. Both expressed concerns that excessive press coverage could make it difficult to select an unbiased jury. A representative of channel 13 television in Rochester argued for disclosure, contending that the First Amendment generally allows access to motion papers, and that there is no reason to deviate from that general rule in this case. The court is reluctantly constrained to agree with the media’s position. I—I hH The right of the public to access criminal trials has surprisingly shallow roots, dating back less than 40 years to Richmond Newspapers, Inc. v Virginia (448 US 555, 580 [1980]), where the Supreme Court held that such a right “is implicit in the guarantees of the First Amendment; without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and ‘of the press could be eviscerated.’ ” Prior to that, the right to a public trial was thought to be personal to the defendant; indeed, the language of the Sixth Amendment itself strongly suggests this, since it states that the right to a public trial is one that “the accused shall enjoy” (see generally Matter of Associated Press v Bell, 70 NY2d 32, 37 [1987]). Regardless of its relatively short period of recognition, however, “the presumption of access now lies squarely within the First Amendment” (Matter of Capital Newspapers Div. of Hearst Corp. v Lee, 136 Misc 2d 494, 499 [Sup Ct, Albany County 1987]). Since Richmond, the right has been held to extend not only to trials, but suppression hearings as well (see Bell, 70 NY2d at 38-39) and, most critically to this case, motion papers (see People v Burton, 189 AD2d 532, 535 [3d Dept 1993] [“To the extent that the documents were submitted in connection with contested motions, the hearing of which were or would be accessible to the news media and the public, a qualified First Amendment right of access to them would also apply”]). As the above quote from Burton makes clear, however, the public’s (and by proxy the media’s) First Amendment right of access to criminal proceedings is not absolute, but, rather, “qualified” (id.). “Although open criminal proceedings in general and open suppression hearings in particular serve to assure fairness and integrity, there are circumstances where the right of the accused to a fair trial might be inhibited or undermined by unrestricted publicity” (Bell, 70 NY2d at 38). When a defendant feels that their “right to a fair trial is threatened ‘the trial court must determine whether the situation is such that the rights of the accused override the qualified First Amendment right of access’ ” (id. at 38-39). The test to be applied in making this determination is whether “(1) there is a substantial probability that defendant’s right to a fair trial will be prejudiced by publicity that sealing would prevent, and (2) reasonable less restrictive alternatives to sealing cannot adequately protect defendant’s fair trial rights” (Burton, 189 AD2d at 535). In addition, any closure or sealing must be “narrowly tailored to serve the asserted interests” (People v Arthur, 178 Misc 2d 419, 422 [Sup Ct, NY County 1998]). The burden of establishing that closure or sealing is required is firmly on the defendant (see Bell, 70 NY2d at 39). And the defendant must demonstrate particular factors that would allow a court to make “ ‘specific findings’ ” that the above cited test is satisfied; the mere “ ‘possibility’ ” that publicity “might affect jury selection” is not sufficient (id.). “[B]are con-clusory assertions” of potential jury taint are insufficient (People v Burton, 189 AD2d at 536; see also People v DeBeer, 3 Misc 3d 515, 517 [Ontario County Ct 2004] [“mere conclusory, nonspecific allegations” are insufficient to warrant sealing]). The arguments made in favor of sealing in this case fall squarely within the category of “bare conclusory assertions” (id.) which simply do not allow this court to make “ ‘specific findings’ ” that sealing is necessary to protect defendant’s Sixth Amendment rights. While this court does not agree with the articulation of the court in DeBeer (3 Misc 3d at 517) that there must be a showing that it would be “virtually impossible” to select an impartial jury,* here, there is no showing whatsoever that would allow this court to make “ ‘specific findings’ ” of even a “substantial probability” (Bell, 70 NY2d at 39) of such an eventuality. While the Fourth Department in Matter of Gannett Co. v Falvey (181 AD2d 1038 [4th Dept 1992]) and Matter of Johnson Newspaper Corp. v Clary (167 AD2d 968 [4th Dept 1990], appeal dismissed 77 NY2d 889 [1991]) held that suppression motion papers could be sealed pending the outcome of the suppression hearings, so that evidence that might be suppressed was not made public, in both cases, the court was able to make the required “specific findings” of “substantial probability” of prejudice to the defendants. Unfortunately, I cannot make such specific findings on the record here provided. It would seem to this court that sealing the motion papers until after the suppression hearing to ensure that potentially suppressible evidence is not made public would be a reasonable time, place and manner restriction (see generally Richmond Newspapers, 448 US at 581 n 18). However, that analysis has not been utilized in this context, and this court is bound by the precedent set forth above. Accordingly, it is hereby ordered that copies of all motion papers submitted by the parties shall be filed by the respective parties in the Livingston County Clerk’s Office on or before September 22, 2017. The full text of the papers will be available for public inspection, without time limit, but the papers shall not be photographed or photocopied. The court’s pronouncement of this standard in DeBeer was purportedly based upon the Fourth Department’s use of those words in Matter of Johnson Newspaper Corp. v Clary (167 AD2d 968 [4th Dept 1990], appeal dismissed 77 NY2d 889 [1991]). The Fourth Department’s mention of “virtually impossible” in Johnson, however, was a mere recitation of the trial court’s specific finding, which clearly was sufficient to satisfy the “substantial probability” standard set by Bell. It was not an enunciation of a higher standard to be applied in every case.