**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 14 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES,

     Plaintiff-Appellee,

v.

TIMOTHY JAMES MCVEIGH and
TERRY LYNN NICHOLS,

     Defendants-Appellees,

APPEAL OF THE DALLAS MORNING
NEWS, THE COLORADO-
OKLAHOMA TRIAL GROUP, AND
THE COLORADO-OKLAHOMA PRINT
MEDIA GROUP ("Media
Representatives"),

     Movants-Appellants.

-----------------------------------------------------

REPORTERS COMMITTEE FOR THE
FREEDOM OF THE PRESS,
NEWSDAY, AND THE LOS ANGELES
TIMES,

     Amici Curiae.

No. 96-1409, 96-1464

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 96-CR-68-M)**

---

Douglas Letter, Appellate Litigation Counsel, Civil Division, Department of Justice, Washington, D.C., for the United States (Joseph H. Hartzler, and Sean Connelly, Special Attorneys to the United States Attorney General, with him on the briefs)

Stephen Jones, Jones Wyatt & Roberts, Denver, Colorado, for Timothy James McVeigh (Robert Nigh, Richard H. Burr III, and Jeralyn E. Merritt, with him on the briefs); Michael E. Tigar, for Terry Lynn Nichols (Ronald G. Woods, N. Reid Neureiter, Adam Thurschwell, and Jane B. Tigar, Denver, Colorado, with him on the briefs)

Paul B. Watler, Jenkins & Gilchrist, Dallas, Texas, for the Media Representatives (Rachel E. Boehm, Jenkins & Gilchrist, Thomas B. Kelly, Steven D. Zansberg, and Faegre & Benson, Denver, Colorado, with him on the briefs)

Jane E. Kirtley, Reporters Committee for Freedom of the Press, Arlington, Virginia, for Amici Curiae Reporters Committee for the Freedom of the Press, Newsday, and the Los Angeles Times (Barbara Lerner, Reporters Committee for Freedom of the Press, Carolyn Schurr, Newsday, Melville, New York, Karlene W. Goller, Los Angeles Times, Los Angeles, California, with her on the brief)

Before **EBEL**, Circuit Judge, **MCWILLIAMS**, Senior Circuit Judge, and **KELLY**, Circuit Judge.

**PER CURIAM.**

This case involves a challenge to the district court's sealing of three sets of documents in the Oklahoma City bombing trial: (1) defendant Terry Lynn Nichols' motion to suppress certain evidence, which motion was made available to the public only in redacted form, and exhibits attached to that motion; (2) Exhibit 72 filed in connection with Nichols' motion to suppress, which consisted of FBI reports concerning Nichols' nine hour statement to authorities on April 21-22, 1995; and (3) motions for separate trials made by both Nichols and defendant Timothy James McVeigh, which were made

2

available to the public only in redacted form, and attachments thereto. The Dallas Morning News, along with other representatives of the media known collectively as the Colorado-Oklahoma Trial Group and the Colorado-Oklahoma Print Media Group, objected to the sealing orders based on both the First Amendment and the common law right of access to the documents. We affirm the district court's orders.

## I.

## BACKGROUND

This case concerns an asserted right of press access to certain documents relating to the district court proceedings arising out of the bombing of the Murrah Federal Building in Oklahoma City, Oklahoma, on April 19, 1995. At the time this action was commenced, Timothy McVeigh had been accused of committing the bombing, which killed 168 people. McVeigh has subsequently been convicted and sentenced to death. McVeigh's co-defendant, Terry Nichols, who is accused of assisting McVeigh in his preparation for the bombing, is scheduled to go to trial following the conclusion of post-trial proceedings in the McVeigh matter.

On April 21, 1995, two days after the bombing, Nichols heard a news report that McVeigh was a suspect in the bombing. The report also mentioned Nichols as a potential suspect. After hearing the report, Nichols, who lived in Herington, Kansas, drove to the local police station, identified himself, and asked to speak with someone regarding why his name was being mentioned in connection with the bombing investigation. From 3:00

p.m. that afternoon until just after midnight the next morning, law enforcement officers questioned Nichols regarding his relationship with McVeigh and his knowledge about the bombing. After the officers completed their questioning of Nichols, Nichols was arrested on a material witness warrant from the United States District Court in Oklahoma City.

The Oklahoma City bombing has been a matter of substantial public concern from the outset. In late 1995, after venue for the case had been transferred to Denver, and the United States District Court for the District of Colorado had assumed jurisdiction over the matter, the Dallas Morning News and the Colorado-Oklahoma Trial Group and the Colorado-Oklahoma Print Media Group (the "Media Representatives") filed motions seeking access to various sealed documents filed in the case, and requesting that procedures be established for the consideration of future challenges to the district court's decisions to seal documents and to close proceedings to the public. In an order dated January 24, 1996, the district court ruled on those motions. That order set forth the conditions under which documents would be sealed and articulated the standards under which media challenges to such decisions would be considered. United States v. McVeigh, 918 F. Supp. 1452 (D. Colo. 1996).

The January 24 order stated that the district court would consider five questions in determining whether to seal a document:

>     (1)     whether the matter involved activity within the tradition of free
>             public access to information concerning criminal prosecutions;

4

(2)      whether public access might play a significant positive role in the activity and in the functioning of the process;

(3)      whether there was a substantial probability that some recognized interest of higher value than public access to information will be prejudiced or affected adversely by the disclosure;

(4)      whether the need for protection of that interest overrode the qualified First Amendment right of access; and

(5)      whether closure by the court was essential to protect that interest, considering all reasonable alternatives.

Id. at 1464.

This appeal concerns challenges to Judge Matsch's subsequent decisions sealing three separate sets of documents. The relevant documents are:

(1)      The redacted portions of Nichols' "Motion to Suppress Unlawfully Obtained Evidence," together with certain exhibits attached to that motion;

(2)      Notes taken by FBI Agent Stephen E. Smith during the initial interview of Nichols, which were referred to as "Government Exhibit 72" ("Exhibit 72") during the hearings on Nichols' motion to suppress; and

(3)      The redacted portions of McVeigh and Nichols' motions for severance, and the exhibits attached thereto.

5

The Media Representatives now seek review of the district court's orders sealing or redacting the various documents.[1]  Appellants contend that the sealing orders[2] violate their First Amendment and common law rights of access to court documents.  Appellants ask that we remand the case to the District Court with instructions either to unseal the documents or to make more detailed findings to justify keeping the documents under seal.  The United States joins the Media Representatives in this request,[3] as do amici curiae The Reporters Committee for the Freedom of the Press, Newsday, and the Los Angeles Times, which have filed a joint amicus brief.

Both McVeigh and Nichols contend that the sealing orders should be upheld.  McVeigh and Nichols argue that the sealing orders are justified by the extraordinary nature of the case and the interest in assuring their rights to fair trials.  Further, McVeigh and Nichols contend that the orders were justified and adequately explained under the relevant First Amendment and common law standards.

II.

[1]Only The News has objected to the order redacting Nichols' motion to suppress and certain attached exhibits.  That case is docket number 96-1409.  Both The News and the other appellants objected to the orders sealing Exhibit 72 and redacting the severance documents, and that matter is docket number 96-1464.

[2]References to "sealing" material include the redacting of portions of documents that were produced in redacted form.

[3]It is Department of Justice policy to oppose any decision to seal documents unless specified criteria are met, such as where failure to seal the relevant documents will produce "[a] substantial likelihood of denial of the right of any person to a fair trial."  28 C.F.R. § 50.9(c)(6).

6

## JURISDICTION AND STANDARDS OF REVIEW

First, we need to determine the basis of our jurisdiction to consider this appeal. The Media Representatives and the United States argue that jurisdiction over this appeal is available under the collateral order doctrine. 28 U.S.C. § 1291; Cohen v. Beneficial Indus. Loan Corp, 337 U.S. 541, 546 (1949). McVeigh and Nichols, on the other hand, argue that our jurisdiction is limited to mandamus consideration.[4]

The other circuits are fairly evenly split on this issue. Six circuits have concluded that press challenges to orders sealing documents in criminal cases are reviewable under the collateral order doctrine. See In re New York Times, 828 F.2d 110, 113 (2d Cir. 1987); In re NBC, Inc., 828 F.2d 340, 343 (6th Cir. 1987); Newman v. Graddick, 696 F.2d 796, 800 (11th Cir. 1983) (involving an underlying prisoner's civil suit rather than a criminal prosecution); United States v. Dorfman, 690 F.2d 1230, 1231-32 (7th Cir. 1982); United States v. Cianfrani, 573 F.2d 835, 845 (3d Cir. 1978); United States v. Gurney, 558 F.2d 1202, 1207 (5th Cir. 1977), cert. denied, 435 U.S. 968 (1978). Four circuits have elected to review district court orders denying the press access to court documents

---

[4]In their reply brief, the Media Representatives agree that mandamus review would be appropriate in the event that we conclude there is no jurisdiction under the collateral order doctrine. Treating an asserted appeal as a petition for a writ of mandamus in this situation is appropriate if Appellants have standing and have complied with the substantive requirements of Fed. R. App. P. 21(a). In re Washington Post, 807 F.2d 383, 388 & n.3 (4th Cir. 1986). There is no dispute concerning Appellants' standing, and all parties conceded at oral argument that there is no dispute as to whether Appellants complied with the requirements of Rule 21(a).

7

through mandamus proceedings.  See Seattle Times Co. v. United States District Court, 845 F.2d 1513, 1515 (9th Cir. 1988); Washington Post, 807 F.2d at 388, 393; In re Globe Newspaper Co., 729 F.2d 47, 50 (1st Cir. 1984); In re Iowa Freedom of Information Council, 724 F.2d 658, 660 (8th Cir. 1992) (involving a contempt proceeding arising out of an underlying civil action).  In any event, all circuits that have considered the issue have found appellate jurisdiction to consider the issue under one doctrine or the other.

In the Tenth Circuit, we have concluded that mandamus is the proper vehicle for the press to utilize in challenging bar orders directed toward trial participants when the press itself was not a party to the bar order.  Journal Publishing Co. v. Mecham, 801 F.3d 1233, 1236 (10th Cir. 1986).  We similarly conclude that mandamus is the proper vehicle for reviewing court orders sealing or redacting court documents in criminal proceedings.  This circuit takes a "narrow[] view" of the applicability of the collateral order doctrine in criminal cases.  D & H Marketers, Inc. v. Freedom Oil & Gas, Inc., 744 F.2d 1443, 1445 (10th Cir. 1984) (en banc).  Here, we note that the district court apparently treated the media objections to its closure orders as mandamus actions.  The January 24, 1996 order stated that the media organizations "are not . . . parties," and concluded that their "motions are more appropriately considered as a collateral or ancillary civil action in the nature of a petition for writ of mandamus . . . ."  McVeigh, 918 F. Supp. at 1452.  Finally, we observe that collateral order appellate review would be unusual in this situation, where

8

the Media Representatives were not parties to the underlying proceeding and were not themselves directly enjoined by the sealing orders.

In determining whether to grant a writ of mandamus, we consider five 'nonconclusive guidelines':

    (1)    whether the petitioner seeking the writ has no other adequate means to secure the relief desired;

    (2)    whether the petitioning party will be damaged or prejudiced in a way not correctable on appeal;

    (3)    whether the district court's order constitutes an abuse of discretion;

    (4)    whether the court's order represents an often repeated error and manifests a persistent disregard of federal rules; and,

    (5)    whether the district court's order raises new and important problems or legal issues of first impression.

United States v. Roberts, 88 F.3d 872, 882-83 (10th Cir. 1996). The first and fifth factors are clearly applicable here. To the extent that the second factor asks only if petitioners could adequately assert their claims on direct appeal, that factor is also satisfied, although we do not conclude that the petitioners are damaged or prejudiced in any legally cognizable way. The fourth factor, at least insofar as it requires a finding of persistent error and disregard for federal rules, is inextricably linked to the third factor of abuse of discretion. Thus, this case really boils down to whether the district court abused its discretion in sealing and redacting the documents here sought by petitioners. That requires an analysis of whether the documents are subject to the Media Representatives'

9

First Amendment and common law rights of access, and whether the district court clearly violated a legal duty in its assessment of how those rights apply to the documents. Accordingly, we now turn to a consideration of the merits of the petition.

III.

**ANALYSIS**

The Media Representatives assert both a common law and a First Amendment right to access the unredacted documents at issue. It is clearly established that court documents are covered by a common law right of access. Nixon v. Warner Communications, 435 U.S. 589, 599 (1978). Under that doctrine, judicial documents are presumptively available to the public, but may be sealed if the right to access is outweighed by the interests favoring nondisclosure. Nixon, 435 U.S. at 602. Challenges to closure decisions based on the common law right of access are reviewed for abuse of discretion. Nixon, 435 U.S. at 599.

The Media Representatives further contend there is a First Amendment right of access to the documents. The First Amendment protects the right of the public and the press to attend criminal trials. Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 558-81 (1980) (plurality opinion). The Supreme Court has applied a qualified version of this First Amendment right to attend certain pre-trial proceedings in criminal cases which historically have been, and logically should be, open to the public, allowing access except where closure is

10

essential to serve a higher interest and where closure is narrowly tailored. Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 7-9 (1986) (Press Enterprise II) (recognizing right of access to preliminary hearings as conducted in California); Press-Enterprise Co. v. Superior Court, 464 U.S. 501 (1984) (Press Enterprise I) (recognizing right of access to voir dire proceedings).

A number of circuits have concluded that the logic of Press-Enterprise II extends to at least some categories of court documents and records, such that the First Amendment balancing test there articulated should be applied before such qualifying documents and records can be sealed. It should be emphasized, however, that in not all of these cases did the court ultimately conclude that these records had to be made available to the public after the balancing test was applied. See, e.g., Washington Post v. Robinson, 935 F.2d 282, 287 (D.C. Cir. 1991) (plea agreement -- vacated order to seal because of inadequate justification and inadequate findings); In re Search Warrant for Secretarial Area Outside Office of Gunn, 855 F.2d 569, 573 (8th Cir. 1988) (affidavits accompanying search warrants -- affirmed order to seal affidavits and revised order to seal docket entries); United States v. Haller, 837 F.2d 84, 87 (2d Cir. 1988) (plea agreement -- affirmed order to seal even though district court findings were inadequate because record was sufficient to enable appellate court to conduct a balancing test); In re NBC, Inc., 828 F.2d 340, 343-44 (6th Cir. 1987) (motions concerning recusal of trial judge and defense counsel conflict of interest -- remanded for more adequate findings); In

11

re New York Times Co., 828 F.2d 110, 114 (2d Cir. 1987) (suppression motions and accompanying exhibits -- remanded for more adequate findings and for consideration of redacting sensitive material); cf. Associated Press v. United States District Court, 705 F.2d 1143, 1144 (9th Cir. 1983) (pre-Press Enterprise II case holding First Amendment prohibited blanket order sealing all documents filed in a high-profile criminal prosecution of John DeLorean, and remanding for document-by-document evaluation).

It is uncertain whether the Tenth Circuit would apply the First Amendment standards of Press Enterprise II or the common law standard of Nixon to a media request for access to court documents, where as here the press was present at the hearings involving those documents. Although we have held that there is at least a common law right of access to court documents, we have not previously decided, nor do we need to decide in this case, whether there is a First Amendment right to judicial documents. We have concluded that there is no "general" First Amendment right of access that extends to a law firm's commercially motivated request for the names and telephone numbers of persons charged with misdemeanor driving offenses. Lanphere& Urbaniak v. Colorado, 21 F.3d 1508, 1512 (10th Cir. 1994); see also Matter of Search of 1638 E. 2d St., Tulsa, Okla., 993 F.2d 773 (10th Cir.) (applying a common law standard, but it is unclear whether a First Amendment argument was advanced in that case), cert. denied, 510 U.S. 870 (1993). In United States v. Hickey, 767 F.2d 705 (10th Cir. 1985), we observed that Press Enterprise I said nothing about the "constitutional dimensions, if any" of the right to

12

access court documents, but rather it "deal[t] with the general issue of closed trial and pre-trial proceedings." Id. at 709. We further noted that Nixon remained "the only decision of the Supreme Court directly dealing with the more narrow issue of access to court files," and that in Nixon the Court did not recognize such a right under the facts of that case. Hickey was decided one year prior to Press Enterprise II. However, nothing in Press Enterprise II is inconsistent with what we said in Hickey, as Press Enterprise II also involved a closed proceeding and not sealed documents.

Of course, Nixon did not hold that there is no First Amendment right to access court documents. Rather, the Court there merely held that, in a situation where there "was no question of a truncated flow of information to the public," there was no right to physically access and copy the Watergate tapes that had already been played in open court where transcripts of the tapes were available to the media and the public generally. 435 U.S. at 609-10. Thus, that case did not address whether there was a First Amendment right to access to court documents when access to those documents is an important factor in understanding the nature of proceedings themselves and when access to the documents is supported both by experience and logic. There is not yet any definitive Supreme Court ruling on whether there is a constitutional right of access to court documents and, if so, the scope of such a right. See Lanphere, 21 F.3d at 1512 (suggesting the possibility of using the First Amendment standard in those limited circumstances where experience and logic support public access to judicial documents).

13

In any event, in his January 24, 1996 Order, Judge Matsch concluded that the Press Enterprise II standard would apply to subsequent requests for access to sealed documents. 918 F. Supp. at 1463. Further, both the common law and First Amendment standards ultimately involve a balancing test, and the First Amendment right of access receives more protection than the common law right. Thus, if we find the district court orders satisfy the First Amendment standard, as we do, we will necessarily find that the orders satisfy the common law standard as well. Accordingly, for the purposes of this opinion, we assume without deciding that access to judicial documents is governed by the analysis articulated in Press Enterprise II.

## IV.

## APPLICATION

Assuming that the Press Enterprise II right of access extends to at least some types of judicial documents, the question remains whether that right applies to the particular types of documents at issue in this case. In determining whether a particular type of document is included within the First Amendment right of access, courts engage in a two-pronged inquiry in which they ask: (1) whether the document is one which has historically been open to inspection by the press and the public; and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." Press Enterprise II, 478 U.S. at 8-10. This two-part inquiry is referred to as the test of "experience and logic." Press Enterprise II, 478 U.S. at 9. If the qualified First

14

Amendment right of access is found to apply to the documents under the "experience and logic" test, the district court may then seal the documents only if "closure is essential to preserve higher values and is necessary to serve that interest." Press Enterprise I, 464 U.S. at 510.

In evaluating the district court's orders regarding these particular documents, it is important to bear in mind the extraordinary context of this case as a whole. A high-profile case such as this imposes unique demands on the trial court, and requires the court to establish procedures for dealing effectively, efficiently and fairly with recurring issues such as whether documents should be placed under seal or redacted. The district court's January 24, 1996 order sought to establish such a procedure. That order, which apparently has not been challenged, carefully discussed the relevant constitutional concerns, and the district court referred back to that order in its subsequent orders sealing the documents at issue here. Accordingly, the January 24 Order serves as an important backdrop to our consideration of this petition.

The documents at issue here include: (1) a motion to suppress, and its accompanying exhibits; (2) an exhibit apparently considered by the court for some purposes at Nichols' suppression hearing; and (3) motions to sever the Nichols and McVeigh trials together with accompanying exhibits. We consider each set of documents in turn.

A. The Suppression Motion Papers

15

Suppression motions have historically been open to inspection by the press and the public. The suppression hearing is a critical pre-trial proceeding, one which is often "as important as the trial itself." Waller v. Georgia, 467 U.S. 39, 46-48 (1984). Because the suppression hearing is the point in the process where the conduct of law enforcement officers is at issue, the public interest in access to a suppression hearing is particularly high. Id. Thus, the Press Enterprise II test of "experience and logic" suggests that the qualified right of access applies to the suppression motion.

However, the right of access to suppression hearings and accompanying motions does not extend to the evidence actually ruled inadmissible in such a hearing. United States v. Gurney, 558 F.2d 1202, 1210 (5th Cir. 1977) ("[T]he press has no right of access to exhibits produced under subpoena and not yet admitted into evidence, hence not yet in the public domain."); In re Globe Newspaper Co., 729 F.2d 47, 54 (1st Cir. 1984) (stating that there is no constitutional right of access to inadmissible evidence); Pell v. Procunier, 417 U.S. 817, 834 (1974) ("[T]he Constitution does not . . . require government to accord the press special access to information not shared by members of the public generally.") Neither tradition nor logic supports public access to inadmissible evidence. Access to inadmissible evidence is not necessary to understand the suppression hearing, so long as the public is able to understand the circumstances that gave rise to the decision to suppress. Moreover, suppressed evidence, by definition, will not be admissible at trial, and thus press access to such evidence will not play a significant positive role in the

16

functioning of the criminal process, as that evidence is simply irrelevant to the process. On the contrary, disclosure of such evidence would play a negative role in the functioning of the criminal process, by exposing the public generally, as well as potential jurors, to incriminating evidence that the law has determined may not be used to support a conviction.

Here, the district court has only sealed those portions of the motion and exhibits that contain materials, or excerpts from materials, ruled inadmissible in the McVeigh trial. Sealing these materials was necessary to protect the integrity of the order that the statements at issue constituted inadmissible hearsay or were otherwise inadmissible. Access to the redacted information is not needed for a full understanding of the court's decision on the motion to suppress, as the suppression hearing itself was open, and the court order provided a detailed outline of the reasons for its conclusion that the statements were inadmissible in the McVeigh trial. The court held a four-day long public suppression hearing, issued a publicly available order, and made available to the public redacted versions of the motions to suppress and attached exhibits. Thus, both the press and the public had ample opportunity to understand the circumstances surrounding Nichols' statements, and the reasons why those statements were deemed inadmissible against McVeigh. In conclusion, we believe the First Amendment right of access does not extend to the evidence actually suppressed in the suppression hearing, and the order

sealing portions of the suppression motion and attached exhibits was consistent with any First Amendment or common law rights of access.

**B. Exhibit 72**

Similarly, access to Exhibit 72 is not supported by either tradition or logic. Exhibit 72 -- the raw notes taken by Agent Smith during the Nichols interview -- consists entirely of the hearsay statements that the district court concluded would not be admissible at the McVeigh trial. As was just discussed, there is no tradition of access to inadmissible evidence, and access to such information would not play a positive role in the functioning of the criminal process. Rather, access would have the deleterious effect of making publicly available incriminating evidence that the district court has ruled may not be considered in assessing the defendant's guilt. Moreover, through attending the public suppression hearing or reading the publicly available transcripts of that hearing, the press and public had ample opportunity to understand the general nature of and circumstances surrounding Exhibit 72, and the district court's rationale for ruling it inadmissible.

**C. The Severance Documents**

Again, we will assume without deciding that the First Amendment right of access applies to at least some portions of the severance documents, and will move on to apply the balancing test to the particular severance materials sealed in this case.

We believe the district court properly balanced First Amendment interests against the defendants' right to a fair trial in redacting the severance motions. At the severance

18

stage, each defendant had a strong interest in shifting blame to the other, and in showing the court that their defenses were mutually antagonistic. To make such a showing each defendant and his counsel had to discuss candidly his trial strategy and the strengths and weaknesses of his respective case. Granting general access to such documents would create a Hobson's choice between the need to obtain severance and the need to protect the client's interest in avoiding prejudicial pre-trial publicity. Although the redactions were substantial, the district court believed the redactions were necessary to avoid chilling the sort of candor needed to assess whether separate trials were necessary. New York Times v. Biaggi, 828 F.2d 110, 114 (2d Cir. 1987) ("The court, in applying the balancing test mandated by the First Amendment, should give added weight to fair trial and privacy interests where requiring disclosure will have a potential chilling effect on future movants.") Particularly in light of the abuse of discretion standard applicable to this mandamus action, we decline to second-guess the district court's conclusion on the record before us.

## V.

## DISTRICT COURT FINDINGS

We also believe that the district court made adequate findings to support its orders, and that it narrowly tailored those orders to the compelling interests at stake. With respect to those proceedings and documents to which the First Amendment right of access applies, sealing is only appropriate if the district court makes "specific, on the record

findings demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest." Press Enterprise II, 478 U.S. at 13-14 (quoting Press Enterprise I, 464 U.S. at 510).

In this case, the district court made findings sufficient to support its sealing orders. With respect to the limited redactions of the suppression motion and accompanying exhibits,[5] the court noted that the motions contained "references and attachments which are not now and may never be in evidence," and that disclosure "would likely generate pre-trial publicity prejudicial to the interests of all parties in this criminal proceeding." Moreover, the court stated that its decision was based on the criteria set forth in its January 24 Order. The previous order set out the applicable constitutional standards, and discussed how those standards would be applied to sealing decisions throughout the case. McVeigh, 918 F. Supp. at 1464. These findings were adequate to "ensure that a reviewing court [could] determine whether the closure order was properly entered." Press Enterprise I, 464 U.S. at 510.

The district court also made adequate findings to support its redaction of the severance motion and exhibits attached thereto. In explaining its decision, the court again referred to the criteria set forth in the January 24 Order. Moreover, the court expressed

---

[5]Because we concluded that the First Amendment right of access does not apply to Exhibit 72, or to those portions of the suppression motion and accompanying exhibits that consisted of the evidence actually suppressed, it was not necessary for the district court to make the specific balancing findings required in Press Enterprise II as to such materials.

20

concern regarding the "chilling effect" that disclosure of these documents would have on the candor of defense counsel seeking separate trials, a rationale which we have concluded provided a sufficient basis for sealing the materials. Although the district court discussed its decision in terms of the "work product" doctrine, a doctrine which is likely inapplicable once the motions were submitted to the court, its discussion of its decision provides us with an adequate basis for reviewing the rationale for the decision.

Furthermore, we believe that the sealing orders were narrowly tailored to the compelling fair trial interests at stake. This is not a case where the district court has sealed entire documents or held closed pre-trial proceedings. Rather, the suppression and severance hearings were held in open court, and redacted versions of the documents at issue were made available to the public. Many of the other avenues often available to limit the prejudicial publicity that would arise from disclosure of these materials -- such as a venue change, a continuance, extensive voir dire, and admonishments to the jury -- had already been exhausted by the time the orders were entered or were ongoing processes utilized by the court to try to protect the defendants' right to a fair trial from the substantial publicity that was occurring. Further, we cannot say that the district court abused its discretion in electing not to sequester the jury during what was anticipated to be a several month long trial.

Finally, we have conducted an in camera review of the sealed and redacted material. Based on that review we conclude that the district court properly sealed only

21

those portions of the documents at issue necessary to protect, respectively, the integrity of suppressed evidence and the defendants' ability to argue effectively that separate trials were warranted. Furthermore, the court recognized that at some later point in the proceedings the balance of interests could change, and that further disclosures might be appropriate at such time. Cf. Seattle Time Co. v. Rhinehart, 467 U.S. 20, 31-34 (1984) (upholding protective orders protecting the confidentiality of discovery materials produced in pretrial discovery when the order does not restrict the dissemination of such information if later introduced at trial or otherwise obtained through means independent of the court's process). Consequently, we conclude that the substantial portions of the documents that were made publicly available have provided the press and the public with a constitutionally sufficient opportunity to understand the decisions at issue.

## CONCLUSION

For the foregoing reasons, the petition for a writ of mandamus is DENIED.