UNITED STATES of America

v.

Francis J. SALEMME, et al.

UNITED STATES of America

v.

John MARTORANO.

Nos. CR. 94–10287, CR. 97–10009.

United States District Court,
D. Massachusetts.

Sept. 10, 1997.

Fred Wyshak, James D. Herbert, U.S. Attys., Strike Force, Boston, MA, Brian T. Kelly, U.S. Atty's Office, Strike Force Div., Criminal, Boston, MA, for U.S.

Kenneth J. Fishman, Bailey, Fishman & Leonard, Boston, MA, for Stephen Flemmi.

Anthony M. Cardinale, Boston, MA, for Francis P. Salemme and Robert P. Deluca.

John Mitchell, Larossa, Mitchell & Ross, New York, NY, for Francis P. Salemme.

Michael Bourbeau, Bourbeau & Bourbeau, Bonilla & Tocchio, P.A., Boston, MA, for James M. Martorano.

Martin G. Weinberg, Oteri, Weinberg & Lawson, Boston, MA, for John V. Martorano.

### ORDER

WOLF, District Judge.

On September 2, 1997, the defendants filed and served a motion to dismiss all pending indictments, a memorandum of law in support of that motion, and a related affidavit of Attorney M. Cardinale, with attachments. Pursuant to the court's Orders, the filings were made under seal because, as anticipated, they include information derived from documents produced in discovery that are subject to a protective order prohibiting the parties from disclosing their contents without authorization of the court. *See* June 26, 1997 Order, ¶ 9(c); August 22, 1997 Order. On September 3, 1997, defendants belatedly in-

formed the court that they advocate the complete unsealing of the foregoing submissions.[1]

On September 4, 1997, a reporter for the *Boston Herald* submitted a letter to the court requesting "unredacted access to the Sept. 2 Motion to Dismiss."

On September 5, 1997, the government belatedly submitted a letter opposing the unsealing.[2]

In addition, on September 3, 1997, defendant Stephen Flemmi filed, under seal, pursuant to Fed.R.Crim.P. 12.3, a notice of his intent to claim a defense of actual or believed exercise of public authority on behalf of a law enforcement agency at the time of the offenses alleged in the Fourth Superseding Indictment. The defendants had been ordered to file any such notice(s) by August 25, 1997, and were not directed to submit such notice(s) under seal. *See* August 11, 1997 Order, ¶ 2.

The August 22, 1997 Order advised the parties of the court's intent "to make the complete submissions concerning the motions to dismiss part of the public record unless there is a compelling, countervailing consideration concerning a portion of them." Thus, if the parties wished to object to complete unsealing, they were ordered to "state with particularity the grounds for continued impoundment of portions of the document(s) at issue, and identify the redactions proposed." August 22, 1997 Order.

Upon consideration of the parties' statements concerning impoundment, the court concludes that the submissions that have been made to date relating to defendants' motion to dismiss and Flemmi's Fed. R.Crim.P. 12.3 notice should now be unsealed without any redactions. However, to the extent that defendants are now seeking authorization to disclose any or all of the documents or information received in discovery subject to the June 26, 1997 protective order, that request is being denied.[3]

 The principles which are applicable to this decision are addressed in this court's June 6, 1997 Memorandum and Order, at 19–24, and also include the following principles. There is at common law "a general right to inspect and copy public records and documents."[4] *Nixon v. Warner Communica-*

---

1. Defendants were ordered to inform the court of their position concerning unsealing at the time that their submissions were made. *See* August 22, 1997. Nevertheless, they failed to do so until reminded by the court on September 3, 1997.

2. The August 22, 1997 Order directed the government to file "any objection to the complete unsealing [of the motion to dismiss] within two business days of the submission."

3. Defendants' September 3, 1997 letter requests that the court order the unsealing of the submissions relating to the motion to dismiss and "all other documents and information which relate to the defendants' pretrial motions." This request appears to include the documents and information defendants have received in discovery pursuant to the June 26, 1997 Order. If defendants wish to request the unsealing of only submissions made to the court in August 1997 concerning discovery disputes, they shall describe those documents, and the reasons for their unsealing, with particularity and the government shall respond in the manner required by the August 22, 1997 Order.

4. "There is not yet any definitive Supreme Court ruling on whether there is a [First Amendment] constitutional right [in addition to the common law right] of access to court documents and, if so, the scope of such right." *United States v. McVeigh*, 119 F.3d 806, 812 (10th Cir.1997).

The Court of Appeals for the First Circuit has held that there is a qualified First Amendment right to access to pretrial proceedings in a criminal case and, without analysis, to related documents. *See In re Globe Newspaper Co.*, 729 F.2d 47, 59 (1st Cir.1984) (holding that public had a First Amendment right of access to bail proceedings and related documents in *United States v. Anguilo*, which was trumped by defendants' paramount interest in a fair trial where hearings and documents involved information derived from electronic surveillance that was subject to a motion to suppress); *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 502 (1st Cir.1989) (holding that First Amendment is implicated in blanket restrictions on access to records of criminal cases not resulting in a conviction). In *McVeigh*, 119 F.3d at 811–12, the Court of Appeals for the Tenth Circuit recently surveyed the case law and expressed uncertainty whether it would apply First Amendment standards or the less stringent common law standards for justifying impoundment to determine the propriety of sealing documents involved in open judicial proceedings. Both the First Amendment and the common law standards require consideration of comparable factors in deciding the issue of impoundment. As this court finds that unsealing the documents now at issue is appropriate even under the less stringent common law standard for justifying impoundment, it is not necessary to engage in a First Amendment analysis as well.

*tions,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978). This right, however, is not absolute. *Id.* at 598, 98 S.Ct. at 1312. Rather, "judicial documents are presumptively available to the public, but may be sealed if the right to access is outweighed by the interests favoring nondisclosure." *United States v. McVeigh,* 119 F.3d 806, 811 (10th Cir.1997) (citing *Nixon,* 435 U.S. at 602, 98 S.Ct. at 1314); *see also United States v. Amodeo,* 71 F.3d 1044, 1047–1050 (2d Cir. 1995). Among the countervailing factors favoring nondisclosure are: (i) prejudicial pretrial publicity; (ii) the danger of impairing law enforcement or judicial efficiency; and (iii) the privacy interests of third parties. *See Amodeo,* 71 F.3d at 1050; *see also McVeigh,* 119 F.3d at 813–14; *In re Globe Newspaper Co.,* 729 F.2d 47, 59 (1st Cir. 1984).

The presumption of public access to judicial documents exists, in part, because public monitoring of the courts is an essential feature of democratic control and accountability. *See Amodeo,* 71 F.3d at 1048; *Federal Trade Commission v. Standard Financial Management Corp.,* 830 F.2d 404, 410 (1st Cir.1987) (stating that "[p]ublic access to judicial records and documents allows the citizenry to 'monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system' ") (quoting *In the Matter of Continental Illinois Securities Litigation,* 732 F.2d 1302, 1308 (7th Cir.1984)). The presumption of public access is particularly strong concerning "pretrial documents ... containing allegations ... of government misconduct, [because access to them is] often important to a full understanding of the way in which the judicial process and the government as a whole are functioning." *Associated Press v. United States District Court for Central District of California,* 705 F.2d 1143, 1145 (9th Cir.1983); *see also McVeigh,* 119 F.3d at 813 (stating that "[b]ecause the suppression hearing is the point in the process where the conduct of law enforcement officers is at issue, the public interest in access to a suppression hearing is particularly high"); *Standard Financial Management,* 830 F.2d at 410 (stating that the "appropriateness of making court files accessible is accentuated in cases where the government

is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch").

In contrast, there are certain situations where the presumption of public access is weak or nonexistent. Specifically:

[w]here testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason. Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach, *Standard Financial Management,* 830 F.2d at 408, and "stand[ ] on a different footing than ... a motion filed by a party seeking action by the court," *Bank of America National Trust & Savings Association v. Hotel Rittenhouse Associates,* 800 F.2d 339, 343 (3rd Cir.1986), or, indeed, than any other document which is presented to the court to invoke its power or affect its decisions.

*Amodeo,* 71 F.3d at 1050.

■ The documents now at issue are the defendants' motion to dismiss and related submissions on which the court will act after receiving the government's response and conducting what the court expects will be open hearings. Thus, those documents are presumed to be available to the public and, under the common law test, may continue to be impounded, in whole or in part, only if the public interest in access is outweighed by legitimate countervailing considerations. *See Nixon,* 435 U.S. at 602–03, 98 S.Ct. at 1314–15; *McVeigh,* 119 F.3d at 811; *Amodeo,* 71 F.3d at 1050.

In this case, the court did not order, and the parties do not advocate, the sealing of Flemmi's Fed.R.Crim.P. 12.3 notice. It was evidently submitted under seal out of an abundance of caution. There is no reason to continue its impoundment.

With regard to the motion to dismiss and supporting documents, the government "op-

poses any unsealing until the government has an opportunity to respond. Unsealing both submissions simultaneously [it states] will ensure that the public record fairly reflects both sides of the issues in dispute." September 5, 1997 letter from the government to the court (the "Sept. 5 letter"). The court believes that it has the discretion to delay the unsealing of documents to which the public will eventually have access. In the present circumstances, however, the desire of the government to respond before defendants' submissions are unsealed is not a sufficient reason to postpone the exercise of any right to access that the public otherwise has.

It is customary for motions to be filed before responses are submitted. To find temporary impoundment justified merely on the ground that the public record is at the moment incomplete would generally erode the presumption in favor of public access to judicial documents.

The public should—and the court expects will—recognize that the motion to dismiss and related submissions present the position of the defendants. The government will soon provide another side of the story.[5] Juries are regularly instructed to keep an open mind until they have received all of the information that they are required to consider, which typically is presented to them like pieces of a jigsaw puzzle. This is also good advice for the public, which will also ultimately have at least this court's decisions on the factual and legal issues raised by the motion to dismiss. However, the fact that all of the information necessary for the court to decide the motion to dismiss has not yet been submitted or developed does not justify continued impoundment of defendants' submissions.

The government also contends that "[a]t a minimum there should be no disclosure of any materials that are the subject of the Court's protective order," because, it asserts, "[t]o permit disclosure of materials simply because one party decides to refer to these materials in a legal submission would render the protective order a nullity and surrender disclosure decisions to parties in the case." Sept. 5, 1997 letter. The court, however, has not surrendered such decisions to the parties. The court has required the parties' submissions to be made initially under seal, and provided the opposing party the opportunity to explain its position concerning continued impoundment, in order to preserve the power of the court to decide disclosure issues and to do so on an informed basis.

Having considered the parties' positions, the court concludes that the government has not provided justification for the continued impoundment of defendants' submissions concerning the motion to dismiss or any part of them. There is no assertion that public disclosure of those submissions will "likely generate pretrial publicity prejudicial to the interests of all parties in this criminal proceeding." *McVeigh*, 119 F.3d at 814–15. More specifically, there is no contention that such disclosures will injure the defendants' paramount right to a fair trial in this venue. *Compare In re Globe Newspaper*, 729 F.2d at 59.

Similarly, the government does not claim that the information it requests be redacted from the submissions now at issue will prove to be inadmissible at the forthcoming hearings. *See, e.g., McVeigh*, 119 F.3d at 813–14 (holding that "the right to access to suppression hearings and accompanying motions does not extend to the evidence actually ruled inadmissible in such a hearing"); *In re Globe Newspaper*, 729 F.2d at 59 (affirming closure of proceedings and sealing of documents involving possibly inadmissible electronic surveillance evidence). Rather, it appears that the matters addressed in the submissions concerning the motion to dismiss will be litigated in open hearings regarding that motion. The court does not perceive that unsealing the documents now at issue will injure its ability to conduct those hearings fairly and efficiently. *See Amodeo*, 71 F.3d at 1050.[6]

---

**5.** In view of the most recent extension allowed for the filing of defendants' motion to dismiss, the government shall respond by September 18, 1997.

**6.** The court notes that government also does not claim that unsealing the documents without redactions will injure any ongoing investigation or its ability to obtain the cooperation of confiden-

Finally, the government has not argued, let alone shown, that there are privacy interests of third parties that outweigh the presumption of public access to defendants' submissions. *Id.* at 1050–51. The privacy interests of third parties may weigh heavily in deciding issues of impoundment. *Id.* "As the Supreme Court noted in *Nixon,* courts have the power to insure that their records are not 'used to gratify private spite or promote public scandal' and have 'refused to permit their files to serve as reservoirs for press consumption.'" *Id.* at 1051 (quoting *Nixon,* 435 U.S. at 598, 98 S.Ct. at 1312). However, despite the directive to the government in the August 22, 1997 Order to "state with particularity the grounds for continued impoundment of portions of the document(s) at issue," the government has not claimed that unsealing will unfairly affect third parties.

Therefore, the defendants' submissions to date concerning the motions to dismiss are being unsealed because they are presumed to be matters of public record and the government has not overcome that presumption with regard to any portion of them.

The court is not, however, now exempting the documents obtained in discovery which are referred to in those submissions from the June 26, 1997 protective order. Those documents, if any, which are admitted in evidence at the forthcoming hearings will, presumably, be available to the public. *See In re Globe Newspaper,* 729 F.2d at 57. Until then, they remain restricted unless otherwise ordered by the court.

Similarly, the additional documents disclosed to defendants in discovery remain subject to the June 26, 1997 protective order. As described earlier, there is no presumption of public access to such documents. *See Amodeo,* 71 F.3d at 1050. Moreover, the protective order is premised on the understanding that government files, particularly those compiling information received from informants, often include information which is raw and may be unreliable. Thus:

> [u]nlimited access to every item turned up in the course of [this] litigation would be

unthinkable. Reputations [could] be impaired, personal relationships ruined, and businesses destroyed on the basis of misleading or downright false information.

*Id.* at 1048–49. Accordingly, unless and until documents and information disclosed in discovery prove to be relevant to a decision that this court must make, and the court determines that countervailing considerations do not justify continued confidentiality, such documents and information will remain subject to the June 26, 1997 protective order.

Therefore, it is hereby ORDERED that:

1. Defendant Flemmi's Notice Under Fed.R.Crim.P. 12.3 (Docket No. 696), defendants' Motion to Dismiss All Pending Indictments (Docket No. 689), defendants' Memorandum of Law in Support of the Defendants' Motion to Dismiss All Pending Indictments (Docket No. 690), and the September 2, 1997 Affidavit of Anthony M. Cardinale in Support of Motion to Dismiss, which was served on the government, (Docket No. 692) are UNSEALED;

2. Defendants' request for any additional modification of the June 26, 1997 protective order is DENIED without prejudice; and

3. Future submissions by the parties shall be made in the manner required by the June 26, 1997 and August 22, 1997 Orders.

tial sources in the future. *See Amodeo,* 71 F.3d at 1050.