OPINION OF THE COURT
George R. Bartlett, III, J.
All three defendants[1] move for an order to close the courtroom to the public and press during any hearings and related court proceedings on motions to suppress evidence, to sever defendants’ trials, to sever counts of the indictment, for a separate sentencing jury and to exclude evidence of prior crimes and/or bad acts of the defendant; and also to seal such motions and any transcripts of court proceedings related thereto, to redact relevant references to evidence which may be excluded at the trial herein, and not to release any such redacted material to the public and press until after the jury is sworn. An evidentiary hearing was requested on the motion. The motion to close the courtroom ¡was made prior to the filing of a related motion. The People take no position. The Daily Gazette and the Times Union, on behalf of the news media, oppose the motion.
The court temporarily sealed all court records in the case pending determination of this motion in order to prevent any potential relief that might have been ultimately afforded to the defendants from being rendered a nullity. The newspapers had already received a copy of the motion papers.
Upon careful review and consideration of the motion, the oral arguments and the law, the motion is partially granted with regard to Sandoval issues to the extent set forth hereinafter and denied in all other respects for the following reasons.
A full evidentiary hearing on a motion to close the courtroom for pretrial hearings is not required to safeguard the integrity of the judicial process. (Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 381.) Indeed, the court finds that the defendants have had ample opportunity to address the court on the issues through the filing of sworn affidavits with exhibits and through oral argument in which references were made to specific items of potential evidence.
The defendants argue that their State and Federal constitutional rights to a fair trial by an impartial jury will be *108 prejudiced by the publicity generated during open pretrial hearings and by relevant court records. The press argues that they also have State and Federal constitutional rights, as well as statutory rights, to be present and report on all court proceedings. The court must determine where to strike the balance between these competing rights.
It is fundamental to our society that criminal trials, including pretrial proceedings, are presumptively open to the public. (Matter of Gannett Co. v De Pasquale, supra, at 376.) Judiciary Law § 4 states, “[t]he sittings of every court within this state shall be public, and every citizen may freely attend the same”. However, this right of public access is not an absolute right to attend all stages of a criminal trial if public access poses a threat or menace to the integrity of the trial. (Matter of Gannett Co. v De Pasquale, supra, at 377.)
In Matter of Associated Press v Bell (70 NY2d 32, 38-39), the Court of Appeals stated:
“We recognize that suppression hearings pose a peculiar risk in that adverse pretrial publicity could inflame public opinion and taint potential jurors by exposing them to inadmissible but highly prejudicial evidence (Press-Enterprise II, 478 US 1, 14-15, supra; Gannett Co. v De Pasquale, 443 US 368, 378, supra; see also, Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 439, supra; Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 380, supra). By the same token, suppression hearings frequently challenge acts of the police and prosecutor * * * giving particular value and significance to conducting such hearings in the public eye (see, Waller v Georgia, supra) * * *
“Although open criminal proceedings in general and open suppression hearings in particular serve to assure fairness and integrity, there are circumstances where the right of the accused to a fair trial might be inhibited or undermined by unrestricted publicity (Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 443-444, supra). Where a defendant’s right to a fair trial is threatened ‘the trial court must determine whether the situation is such that the rights of the accused override the qualified First Amendment right of access’ (Press-Enterprise II, 478 US 1, 9-10, supra).”
The defendant seeking closure bears the burden of showing that there is a “substantial probability” that the defendant’s right to a fair trial will be prejudiced by publicity of the hearing and other court filings, that closing the courtroom would prevent the harm and that reasonable alternatives to closure *109 will not adequately protect the defendant’s constitutional rights. (Matter of Associated Press v Bell, supra, at 39, citing Press-Enterprise II, supra.) Once the defendant has shown that there is a substantial probability of prejudice which can be averted by closing the courtroom, the party opposing closure has the burden of proposing reasonable alternatives that would protect the “overriding interest” at stake. (People v Ramos, 90 NY2d 490, 502-505.)
Have the defendants shown an “overriding interest” which tips the balance in favor of closing the courtroom? Defendant Arroyo’s moving papers consisted of an affidavit of defendant’s attorney, an affidavit of an investigator outlining interviews he conducted with various residents of Schoharie County concerning the casé, and exhibits containing relevant newspaper clippings and television news videotapes. In the moving papers and at oral argument defendants’ attorneys stated that in keeping with the court’s scheduling order, omnibus motions would soon be made which would contain discussion of potentially incriminating statements of the defendants, potentially incriminating physical evidence and prior crimes and/or bad acts which may be attributed to one or more of the defendants. No further specific details were given. Discussion in the motion papers herein focused in large part on the public’s interest in this capital trial and the effect of pretrial publicity on the potential jury pool.
At oral argument all attorneys for the three defendants argued that they intend to challenge the admissibility of statements allegedly made by each of the defendants.[2] They argued that pretrial publicity regarding the statements would irreparably prejudice the public’s perception of their clients and make it impossible to find an impartial jury at the time of trial.
In this court’s order dated September 12, 1997, the court found that the level of pretrial publicity did not require the issuance of a gag order and refused to restrain the speech of the attorneys and investigating agencies. The defendants have made no showing that publicity since that time has heightened. As the case approaches a trial date (still several months in the future), it is pure speculation that publicity will “accelerate” beyond an acceptable level. The “poll” of residents of Schoharie County which was conducted by a Capital Defender investigator is inconclusive as to whether or not a fair and impartial *110 jury will be available at the time of trial. The brief informal questioning performed by the Capital Defender’s investigator cannot be equated with a careful and searching voir dire formally conducted under the auspices of the court in the course of the criminal proceeding.
The defendants argue that since this is a capital case, even the chance of prejudice must be avoided. They make no offering that there are particular circumstances in this case which carry the likelihood that prejudice will inure to the defendant in an open airing of the issues, thus requiring special and extreme recourse by the court. There is no mandate in this State to close pretrial hearings in order to prevent publicity of evidentiary issues. In fact the opposite is required by Judiciary Law § 4. Public pretrial hearings are routinely held in every sort of criminal case and impartial juries are thereafter empaneled. (See, People v Henson, Otsego County Ct, Mar. 16, 1998, Cocoma, J.)
It is only on the showing of some specific circumstance that could cause a significant probability of prejudice to the proceeding that the courts are inclined to close the courtroom and seal the records. In both Matter of Johnson Newspaper Corp. v Clary (167 AD2d 968, appeal dismissed 77 NY2d 889) and Matter of Gannett Co. v Falvey (181 AD2d 1038), the Court reviewed the defendant’s statements and determined that there was a probability that portions, if not all, of the statements would not be admissible at trial. In each case the Court closed the courtroom for the Huntley hearing on the grounds that publicity of the inadmissible evidence would taint the jury pool.
The court has reviewed the purported statements of the defendants which are attached to the CPL 710.30 notice. As in Bell (supra, at 36), this court cannot say whether there will be any inadmissible evidence or whether disclosure of potentially excludable evidence would, in fact, impede finding impartial jurors. The fact that this is a capital case in and of itself does not dictate closure. Any preconceived ideas about the case which potential jurors may have at the time of trial, which is several months away, can be dealt with on voir dire to assure that a fair and impartial jury is empaneled. No other showing has been made which rises to the level of “substantial probability” of prejudice. The Court of Appeals noted in Bell (supra, at 40): “By denying public access to the suppression hearing on a ‘possibility’ that there might be tainted, nonpublic evidence that might impair the selection of an impartial jury — which could very likely be said of every suppression hearing in every *111 highly publicized case — the trial court improperly closed the door on petitioners’ First Amendment rights.” (See also, People v Burton, 189 AD2d 532.)
Defendant’s reliance on United States v McVeigh (119 F3d 806 [10th Cir 1997]) is misplaced for several reasons. In McVeigh the court upheld the sealing of portions of the suppression motion, an exhibit in the suppression hearing and portions of the severance motion.[3] Several points were critical to the McVeigh court’s analysis: (1) the hearing in the case was fully open to the public, a hearing transcript was available, as was the lower court’s decision; (2) the redacted items pertaining to the suppression issue had been ruled inadmissible; (3) the case on review involved only the redaction of excerpts from the documents, not closure of the courtroom; (4) the case was described as “extraordinary”, “high profile” and as “imposing unique demands”; (5) the lower court’s decision was reviewed for abuse of discretion on the record before the appellate court. This case is not in the posthearing stage yet; no evidence has been ruled on yet. This case does not have a public profile equal to, or even near that of the “Oklahoma bombing case”. The defendants herein have, for the most part, made legal arguments unsupported by a specific showing on this motion that their constitutional interests outweighed the public’s qualified right to access.
On the other hand, it is because this is the most serious allegation of a capital offense that the public is entitled to know how the case is proceeding. The public through its elected officials in the State Legislature and the Governor has seen fit to reinstitute capital punishment in our system of justice. The citizens of New York have an obligation to be aware of every stage of such capital proceedings to assure that the system, whereby a person found guilty of a capital crime may pay with his or her life, affords that person the fair and impartial administration of justice through the entire proceeding. The court finds that the public has an overwhelming interest in this matter in keeping all proceedings open. The public interest in this case has not been overridden by the defendants’ speculative assertions that publicity of routine pretrial hearings may prejudice the jury.
*112 The motion to exclude evidence of prior crimes and/or bad acts is a different matter. The Division of Criminal Justice Services criminal history records are not public information (see, People v Hodges, 172 Misc 2d 112). Further, for the crimes charged in this indictment, evidence of prior crimes and/or bad acts is only to be used by the prosecution at trial on cross-examination of a defendant. (CPL 60.40.) The Sandoval hearing is held for the purpose of determining what information will be unsealed or otherwise available for cross-examination if the defendant chooses to testify. If the defendant chooses not to testify, the prosecution is totally precluded from using the information. Since it is impossible to tell at this stage of the proceeding whether or not information of prior crimes, if any, and/or bad acts would in fact ever be used in the trial, this portion of the motion is granted to the extent that the court directs that the Sandoval motions are to be filed under seal; the court will determine when and if a Sandoval hearing will be held, as well as all matters relating to closure and sealing or redacting of court records, after the motion papers have been filed and reviewed.
As to those portions of the motion regarding all other pretrial hearings and papers related thereto, the defendants have not met their burden of proof to demonstrate an overriding interest sufficient to defeat the public’s qualified right to access; and the motion to close the courtroom during pretrial hearings and to seal or redact the related court records is denied. The temporary seal previously imposed is hereby lifted. The remaining relief requested is moot.

. At oral argument on the motion held on March 25, 1998, codefendants McKinley and Edwards joined in the motion originally made by defendant Arroyo.

. There was no mention of physical evidence.

. Although the Tenth Circuit has not adopted the rule that there is a First Amendment right to judicial documents, as has the Second Circuit, the McVeigh court applied that standard in reaching its decision (United States v McVeigh, supra, at 812); consequently the McVeigh analysis should be addressed.